# Commonwealth *v.* Alcoa Properties, Inc., Appellant.

Argued May 26, 1970. Before Bell, C. J., Jones, Cohen, Eagen, O'Brien, Roberts and Pomeroy, JJ.

*N. David Rahal,* with him *Leon D. Metzger,* and *Metzger, Hafer, Keefer, Thomas and Wood,* for appellant.

*George W. Keitel,* Deputy Attorney General, with him *William C. Sennett,* Attorney General, for Commonwealth, appellee.

*Samuel C. Harry,* and *Morgan, Lewis & Bockius,* for amici curiae.

OPINION BY MR. JUSTICE COHEN, October 9, 1970:

This is an appeal by Alcoa Properties, Inc. (Alcoa) a Delaware corporation authorized to do business in Pennsylvania, from a resettlement of its 1964 Pennsylvania franchise tax. The sole question is whether Alcoa is entitled to exercise the statutory election to compute its tax as a "holding company." This election provides that a "holding company" may compute tax by applying the tax rate (5 mills in 1964) to ten percent of the actual value of its whole capital stock rather than to a taxable value determined by applying the customary three-fraction formula to the actual value.

The appellation "holding company" is statutorily defined as follows: "The term 'holding company' shall mean any corporation (i) at least ninety percent of the gross income of which for the taxable year is derived from dividends, interest, gains from the sale or other disposition of stock or securities and the rendition of management and administrative services to subsidiary corporations, and (ii) at least sixty percent of the actual value of the total assets of which consists of stock, securities or indebtedness of subsidiary corporations". Act of August 24, 1963, P. L. 1228, amending Act of June 1, 1889, P. L. 420, 72 P.S. §1871(e) (Supp. 1970). Here, there is no question concerning part (ii) of the definition. The parties agree that over 60% of the actual value of Alcoa's total assets consists of the stock of three subsidiary corporations.

The dispute arises in connection with part (i). In 1964 Alcoa's gross income was $56,176. Of this total $55,260—over 98%—constituted interest. Of this interest $20,262 came from Alcoa's subsidiary corporations, and $34,998 came from loans to companies which

were not subsidiaries of Alcoa. The Commonwealth argues that the statute requires at least 90% of the income (in one or more of the various described forms) to come from subsidiaries and that since only about 37% of Alcoa's income was so derived, Alcoa does not qualify for the election.

Alcoa, on the other hand, argues that the statute is perfectly clear that the income from "dividends, interest, [and] gains from the sale or other disposition of stock or securities" may come from any source while only the income from "the rendition of management and administrative services" must come from subsidiaries. Since, as Alcoa points out, it meets this test, it is entitled to exercise the election.

The court below (one judge dissenting) agreed with the Commonwealth that 90% or more of all the gross income must come from subsidiaries and ruled against Alcoa. It did so, adopting two positions which it expressed as follows:

"The difficulty arises because the legislative draftsman did not pay close attention to rules of grammar. . . .

"As we read the act here in question an intention contrary to defendant's [Alcoa's] position clearly appears. Although the statutory language in Section 21(e)(i) is not as grammatical as it might be we conclude that the words 'subsidiary corporation' refer not only to 'the rendition of management and administrative services' but also to sources of the corporation's income."

The matter is hardly a difficult one. Although the Commonwealth has raised a number of issues apart from the one of actual construction of the language of the statute, we find them irrelevant. First, what was said on the floor of the legislature is irrelevant and inadmissible here, of no consequence whatsoever and, as

this case illustrates, can be so ambiguous as to cause confusion rather than clarification.[1] Second, we do not here deal with an exemption from tax which must be strictly construed. Rather, we have an election given to a taxpayer in connection with a method of computing its tax, a matter which creates no burdens or presumptions or anything of the like. It is a neutral factor which may or may not apply. Third, whether there is or is not some nonstatutory meaning generally applicable to the phrase "holding company" is similarly meaningless since we are dealing here with a statutory definition. And that definition is as clear as it could be. It is not ambiguous, ungrammatical or indicative of a legislative intent contrary to Alcoa's position. Despite the lower court's conclusions on these matters, it pointed to no actual confusion or poor grammar in the language of the statute, nor to any actual expression or indication of contrary legislative intent. It is obvious there is neither.

The preposition "to" before "subsidiary corporations" is not "from." And were it "from," the prior

---

[1] The Commonwealth, in its brief in the court below, relied upon a colloquy between the Majority and Minority leaders of the Senate prior to the vote on the Bill. During that exchange the Minority leader inquired of the Majority leader what the enactment of this Bill would cost the Commonwealth in taxes to which the Majority leader replied, "the cost of this Bill will be approximately $15,000." The Attorney General points out that the loss to the Commonwealth in this action alone is more than double that estimate. In addition, amici filed briefs representing seven additional beneficiaries of the enactment. Hence, it can readily be seen that the estimate of costs to the Commonwealth was grossly understated and demonstrates that what is said on the floor of the House or the Senate should not be relied upon in formulating legislative intent. See *Philadelphia v. Depuy*, 431 Pa. 276, 244 A. 2d 741 (1968); *Martin Estate*, 365 Pa. 280, 74 A. 2d 120 (1950); *Bank of Pennsylvania v. Commonwealth*, 19 Pa. 144 (1852); 2 Sutherland, Statutory Construction §5011 (3d Ed. 1943).

language would be unintelligible. To interpret the statute as the Commonwealth and the lower court would have it, the language would have to be as follows: "The term 'holding company' shall mean any corporation (i) at least ninety percent of the gross income of which for the taxable year is derived from dividends *and* interest *from subsidiary corporations* and gains from the sale or other disposition of stock or securities of *subsidiary corporations* and the rendition of management and administrative services to subsidiary corporations. . . ." [all italicized words added to Act] It is the position taken by the Commonwealth and the court below which distorts the otherwise clear language of the Act.

The judgment of the court below is reversed. Since the parties have stipulated that the correct tax, if Alcoa is right, is $3,745.88, we direct judgment to be entered for the Commonwealth in that amount and remand the case to the court below with instructions to enter judgment in that amount and to direct that such judgment be marked satisfied (all of the tax having been paid) upon payment by Alcoa of the docket costs.

Judgment reversed and case remanded to lower court with instructions.

Mr. Justice ROBERTS and Mr. Justice POMEROY concur in the result.