602 A.2d 1290

COMMONWEALTH of Pennsylvania, Appellant,

v.

Jerry Paul WILSON, Appellee.

COMMONWEALTH of Pennsylvania, Appellant,

v.

Wayne O'Brien AULTMAN, Appellee.

Supreme Court of Pennsylvania.

Argued Dec. 6, 1990.

Decided Jan. 31, 1992.

Susan J. Cherner, Kathleen A. Farrell, Media, Patricia V. Pierce, Philadelphia, Dennis C. McAndrews, Asst. Dist. Atty., Media, Ann Lee Begler, Pittsburgh, and Michael Handler, Indiana, for Amicus—Penna. Coalition Against Rape.

Ronald Eisenberg, Chief, Appeals Div. and George S. Leone, Philadelphia, for amicus, Pennsylvania Dist. Atty. Ass'n.

William J. Martin, Dist. Atty., Robert S. Bell, and Dennis C. McAndrews, Asst. Dist. Atty., for the Com.

Mark S. Guralnick, Broomall, and Dennis C. McAndrews, Asst. Dist. Atty., for Wayne Aultman.

Helen A. Marino, Asst. Defender, for amicus, Public Defender Ass'n of Pennsylvania and Defender Ass'n of Philadelphia.

Before NIX, C.J., and LARSEN, FLAHERTY, ZAPPALA, PAPADAKOS and CAPPY, JJ.

## OPINION

NIX, Chief Judge.

The instant matter presents us with an opportunity to consider and assess, for the first time, the scope and constitutionality of the privilege found at 42 Pa.C.S. § 5945.1. For the following reasons, we reverse the orders of the

Superior Court and reinstate the orders of the trial court. The following facts are pertinent to our determination.

## A.

### *Commonwealth v. Aultman*

Appellee, Wayne O'Brien Aultman, and a co-defendant, James Thistlewood, were charged with rape, involuntary deviate sexual intercourse, criminal conspiracy, and related offenses in connection with the rape of Thistlewood's wife, Donna.[1] Prior to trial, Aultman sought a subpoena to obtain records maintained by the Delaware County Women Against Rape Crisis Center in the preparation of his defense to the instant charges. The trial judge granted the Center's motion to quash the subpoena on the grounds that the subpoena would violate the statutory privilege protecting communications between a sexual assault counselor and the victim of such an assault.

### *Commonwealth v. Jerry Paul Wilson*

Appellee, Jerry Paul Wilson, was charged with and convicted of the rape and indecent assault of Barbara Marie Hager. Prior to trial, appellee issued a subpoena *duces tecum* on Alice Paul House, an Indiana County rape crisis center, requesting the production of the Center's entire file on Barbara Hager. Counsel for Alice Paul House filed a motion to quash the subpoena which was granted on the basis of the privilege purportedly provided by 42 Pa.C.S. § 5945.1.

In both of these cases the defendants, appellees herein, appealed. The Superior Court reversed, basing its determinations in these cases on the decision of this Court in *In the Matter of Pittsburgh Action Against Rape*, *("PAAR")*, 494 Pa. 15, 428 A.2d 126 (1981). In *PAAR*, we were faced

---

1. Mr. Aultman was charged with the rape of Mrs. Thistlewood upon her allegations that her husband, while attempting to engage in sexual intercourse with her, summoned Mr. Aultman from the next room to participate in the encounter. Mr. Thistlewood was also charged in the rape but is not a party to this appeal.

with a factual situation substantially similar to that of the instant case. In *PAAR* the defendant sought access to statements made by the victim which were contained in a written report kept on file by *PAAR*. The defendant's purpose in requesting these reports was to ascertain the existence of any prior inconsistent statements made by the victim which would support defense counsel's theory that the victim had consented. The *PAAR* Court, noting that no statute existed to support *PAAR*'s assertion of absolute privilege regarding counselor-victim communications, declined to create such a privilege. Instead the court created a limited privilege by which defense counsel would be permitted to inspect "notes that are verbatim accounts of the complainant's declarations and notes that the complainant has approved as accurately reflecting what she said." *Id.*, 494 Pa. at 28, 428 A.2d at 132. However, any information solely relating to the counseling service provided and having no bearing whatsoever on the facts of the alleged offense would be withheld from inspection. The Court in *PAAR* attempted to balance the public interest in helping the victim to cope with the trauma that inevitably results from a sexual assault against the right of the accused to discover what the complainant has said. *Id.*, 494 Pa. at 24, 428 A.2d at 130, 132. The Court concluded that despite the compelling interest in the victim's well-being, the accused could not be denied the rights to confrontation and to have the benefit of exculpatory evidence. Accordingly, the defendant was permitted to infringe upon the victim's privacy to inspect

> only those statements of the complainant contained in the file which bear on the facts of the alleged offense. The court, however, must not permit defense inspection of statements of the complainant having no bearing on the facts of the alleged offense and relating instead only to the counseling services *PAAR* provides. The trial court shall not permit defense review of any other aspect of the file.

*Id.*, 494 Pa. at 19, 428 A.2d at 127–28.

The Superior Court concluded that the *PAAR* rationale was applicable in the *Aultman* and *Wilson* cases and rejected the applicability of section 5945.1 because appellees had sought not to question the counselors themselves but to examine only the record developed through consultation. *Commonwealth v. Aultman,* 387 Pa.Super. 113, 563 A.2d 1210 (1989); *Commonwealth v. Wilson,* 375 Pa.Super. 580, 544 A.2d 1381 (1988). The Commonwealth appealed in both cases, requiring us to consider the effect of the legislative enactment upon our decision in *PAAR* and upon defendants' constitutional rights.

The statutory privilege provides, in pertinent part:

A sexual assault counselor has a privilege not to be examined as a witness in any civil or criminal proceeding without the prior written consent of the victim being counseled by the counselor as to any confidential communication made by the victim to the counselor or as to any advice, report or working paper given or made in the course of the consultation.

42 Pa.C.S. § 5945.1(b).[2]

Confidential communications are defined as

Information transmitted between a victim of sexual assault and a sexual assault counselor in the course of that relationship and in confidence by a means which, so far as the victim is aware, does not disclose the information to a third person other than those who are present to further the interests of the victim in consultation or those to whom disclosure is reasonably necessary for the transmission of the information or an accomplishment of the purposes for which the sexual assault counselor is con-

---

2. This provision has since been amended to provide more explicitly the absolute protection previously implied:

(b) Privilege.—

(1) No sexual assault counselor may, without the written consent of the victim, disclose the victim's confidential oral or written communications to the counselor nor consent to be examined in any court or criminal proceeding.

. . . .

As amended 1990, Dec. 17, P.L. 737, No. 183, § 1, imd. effective. 42 Pa.C.S. § 5945.1(b)(1).

sulted. The term includes all information received by the sexual assault counselor in the course of that relationship.

42 Pa.C.S. § 5945.1.[3]

The Commonwealth argues that by enacting section 5945.1 the General Assembly plainly intended to create a broad privilege and overturn our decision in *PAAR*. The Commonwealth contends that the Superior Court's decision effectively abrogates the statute by permitting a defendant to circumvent its provisions through the use of a subpoena *duces tecum*. It is submitted that the legislative history indicates the General Assembly's intent to provide complete confidentiality for rape victims and their counselors, rather than just to prohibit the *oral* testimony of a sexual assault counselor, because even the production of documents has a testimonial component that is prohibited by the statute.

The defendants argue that the explicit language of the statute prohibits only the subpoena of a sexual assault counselor as a *witness* in a proceeding, and that *PAAR* established the procedure governing pretrial inspection of counselling records. Defendants submit that this procedure is a fair balancing of the competing interests presented by the situation.

Section 5945.1 was enacted in December of 1981, subsequent to the *PAAR* decision of January, 1981. The issue we must consider in this case concerns the effect of Section 5945.1 on our decision in *PAAR*. We must decide whether the statutory mandate can be reconciled with the *PAAR* procedure or must be interpreted to override the *PAAR*

---

**3.** This statute has since been amended to provide protection irrespective of the victim's expectation of confidentiality. It provides as follows:

"**Confidential communication.**" All information, oral or written, transmitted between a victim of sexual assault and a sexual assault counselor in the course of their relationship, including, but not limited to, any advice, reports, statistical data memoranda, working papers, records or the like, given or made during that relationship.] 42 Pa.C.S. § 5945.1(a).

It should be noted that the statutes are set forth and discussed in the text as they existed at the time of appellees' trials.

decision. As appellees note, the language of the statute explicitly prohibits the subpoena of a sexual assault counselor *as a witness* regarding confidential communications by a victim or any records developed during the course of treatment. However, since appellees sought to subpoena only the records in these cases, we must determine whether the statutory language was intended to prohibit the production of documents as well.

## B.

In conducting this inquiry we must first ascertain the legislative intent supporting the enactment. We find that the legislative history clearly demonstrates that this statute was response to our decision in *PAAR* and was intended to remedy what the legislature perceived as a grave injustice committed against those who, because of lesser economic means, were forced to seek counseling from a public center rather than a private therapist. A statement recorded at the time of the statute's enactments [4] reveals the intent to provide for the rape crisis center client the same confidentiality that would exist if that victim were to seek private psychotherapeutic treatment.[5] Statement of Representative Alden, 1981 Pa.Legislative Journal—House, pp. 1738–39 (October 14, 1981). It was also noted that the court's decision in *PAAR* had severely undermined the

---

**4.** Statements made by legislators during the enactment process are not dispositive of legislative intent. *Commonwealth v. Alcoa Properties,* 440 Pa. 42, 46 n. 1, 269 A.2d 748, 750 n. 1 (1970). However, they may properly be considered as part of the contemporaneous legislative history. 1 Pa.C.S. § 1921(c)(7). *See, e.g., South Whitehall Twp. Police Service v. South Whitehall Twp.,* 521 Pa. 82, 88, 89, 555 A.2d 793, 796–7 (1989); *Com. v. DePasquale,* 509 Pa. 183, 190–91, 501 A.2d 626 (1985).

**5.** The privilege for the records of a private psychologist is found at 42 Pa.C.S. § 5944:

No person who has been licensed ... to practice psychology shall be, without the written consent of his client, examined in any civil or criminal matter as to any information acquired in the course of his professional services in behalf of such client. The confidential relations and communications between a psychologist and his client shall be on the same basis as those provided or prescribed by law between an attorney and client.

effectiveness of rape counseling centers.[6] Thus, we can infer that the legislature, in enacting Section 5945.1, intended to reverse the effect of our decision in *PAAR*, *see* 1 Pa.C.S. § 1921(c), by preventing the acquisition of all confidential communications by the victim whether in the form of live testimony or through the production of records or other documents.[7]

This interpretation of the legislative intent is essential if any privilege is to exist between the sexual assault counselor and the victim, and the need for such a privilege cannot be disputed. It is without question that the privilege would exist if the victims had sought private psychotherapeutic treatment. The legislature has recognized that communications between a licensed psychologist and a patient are confidential. 42 Pa.C.S. § 5944. *See supra* note 3. This statutory privilege has been interpreted as being absolute and has not been outweighed by a defendant's due process rights. *See Commonwealth v. Kyle*, 367 Pa.Super. 484, 533 A.2d 120 (1987), *appeal denied* 518 Pa. 617, 541 A.2d 744 (1988).

Sexual assault counselors serve an equally important function for the rape victim. Extensive research has been conducted documenting the severe psychological, emotional, and social difficulties suffered by rape victims, which cause a condition known as "rape trauma syndrome". The devastating effects of this condition create a compelling need

6. A statement submitted for the Legislative Journal referred to this Court's decision in *In the Matter of Pittsburgh Action Against Rape*, 494 Pa. 15, 428 A.2d 126 (1981), and pointed out the detrimental effect of that decision on rape crisis centers—several victims had requested the return of their records or had terminated counseling altogether because of their fear that private information would become public. The statement emphasized the necessity for legislation to overrule the *PAAR* decision so that the counseling relationship would not disintegrate totally. In his statement, Representative Alden stressed the need to "reverse the court's ruling and to provide complete confidentiality for rape victims and counselors." Statement of Representative Alden, 1981 Pa.Legislative Journal—House, pp. 1738–39 (October 14, 1981).

7. Significantly, the legislature rejected a proposal which included the very procedure established in *PAAR*.

for a confidential counseling relationship to enable the victim to cope with the trauma. It is generally recognized that rape traumatizes its victim to a degree far beyond that experienced by victims of other crimes. Rape crisis centers have been developed nationwide to help victims of this most degrading offense recover from its debilitating effects.

Rape crisis centers are service facilities staffed with counselors extensively trained in crisis counseling. These counselors provide victims with much needed physical, psychological and social support during the recovery period that the victims otherwise might not be able to afford. At the onset of counseling the victim is informed that her communications will be confidential, and her willingness to disclose information quite obviously is based upon that expectation. The very nature of the relationship between a counselor and the victim of such a crime exposes the necessity for the same confidentiality that would exist if private psychotherapeutic treatment were obtained. If that confidentiality is removed, that trust is severely undermined, and the maximum therapeutic benefit is lost. The inability of the crisis center to achieve its goals is detrimental not only to the victim but also to society, whose interest in the report and prosecution of sexual assault crimes is furthered by the emotional and physical well-being of the victim.

Clearly, our state has significant interest in protecting the confidentiality of communications between victim and counselor which requires the existence of an absolute privilege as to those communications. Therefore, the statutory privilege considered here must extend to the subpoena of records and other documents developed throughout the counseling relationship, any other interpretation of the statute would render the entire privilege meaningless. If the statute were read to permit a defendant to obtain those records, even to ascertain whether any exculpatory or impeachment evidence could be found therein, the confidentiality in which the statute purports to cloak the statements of the victim would cease to exist. Insulating the counselor

from giving testimony would be inconsequential, as most information the counselor might give would be available in the records themselves. This interpretation would yield an absurd result, in contravention of our principles of statutory construction. 1 Pa.C.S. § 1922. Accordingly, we hold that the privilege codified at 42 Pa.C.S. § 5945.1 is intended to be absolute, applying to the production of the documents therein described as well as to the testimony of counselors as explicitly stated.

### C.

Having determined that the privilege is absolute, we next must consider whether the absolute privilege violates the defendants' constitutional rights. Appellees assert that a privilege completely denying access to the information sought deprives them of their right to confrontation and compulsory process under the federal and state constitutions. For the following reasons we find that appellees' constitutional objections have no merit.

Under the United States Constitution, an accused is guaranteed the right to confront the witnesses against him. U.S.C.A. Const. amend. VI. The United States Supreme Court has stated that the Confrontation Clause provides two types of protections for a criminal defendant: the right physically to face those who testify against him, and the right to conduct cross-examination. *Pennsylvania v. Ritchie*, 480 U.S. 39, 50, 107 S.Ct. 989, 997, 94 L.Ed.2d 40 (1987); *Delaware v. Fensterer*, 474 U.S. 15, 18–19, 106 S.Ct. 292, 293–94, 88 L.Ed.2d 15 (1985). The defendants' allegations amount to an assertion that their right to conduct effective cross-examination has been denied.

We find the analysis employed by the Supreme Court in *Ritchie, supra,* to be helpful to our resolution of the instant case. As the *Ritchie* court noted, the Confrontation Clause protects a defendant's trial rights. *Ritchie, supra,* 480 U.S. at 53 n. 9, 107 S.Ct. at 999 n. 9. It should not be constrained to mean that a statutory privilege cannot be maintained when a defendant asserts a need, prior to

trial, for the protected information that might be used at trial to impeach or otherwise undermine a witness' testimony; such an interpretation would "transform the Confrontation Clause into a constitutionally compelled rule of pretrial discovery. Nothing in the case law supports such a view." *Id.* at 52, 107 S.Ct. at 998, *citing California v. Green*, 399 U.S. 149, 157, 90 S.Ct. 1930, 1934, 26 L.Ed.2d 489 (1970) ("[I]t is this literal right to confront the witnesses at the time of trial that forms the core of the values furthered by the Confrontation Clause"); *Barber v. Page*, 390 U.S. 719, 725, 88 S.Ct. 1318, 1322, 20 L.Ed.2d 255 (1968) ("The right to confrontation is basically a trial right"). The Confrontation Clause merely guarantees a defendant the ability to question adverse witnesses; that ability does not include the power to require the pretrial disclosure of any and all information that might be useful in contradicting unfavorable testimony. *Id.* 480 U.S. at 53, 107 S.Ct. at 999. In short, the Confrontation Clause only guarantees "an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." *Delaware v. Fensterer, supra,* 474 U.S. at 20, 106 S.Ct. at 294, (emphasis in original). Thus, the right to confront one's witnesses is satisfied if defense counsel receives wide latitude at trial to question witnesses.[8]

In the instant matters both victims testified at the respective trials. At appellee Wilson's trial the victim testified to the facts surrounding the incident. On cross-examination, defense counsel was given wide latitude as he attempted to test the victim's recollection of those events, and he was permitted, although he declined, to question her about possible other sexual activity on or near the date of the alleged rape. In appellee Aultman's case the victim testified, and again defense counsel was permitted wide latitude in challenging her recollection and in attempting to shift the blame

8. The same result was reached by the Supreme Court of Illinois in *People v. Foggy*, 121 Ill.2d 337, 118 Ill.Dec. 18, 521 N.E.2d 86 (1988).

to the co-defendant.[9] Clearly, in each of these cases the defendant's right to confrontation was satisfied.

■ The Supreme Court in *Ritchie* also considered the applicability of the Sixth Amendment's Compulsory Process Clause, and a majority of the Court concluded that claims of the type asserted by *Ritchie* were best analyzed under the Due Process Clause of the Fourteenth Amendment. *Id.* 480 U.S. at 56, 107 S.Ct. at 1000. In *Ritchie*, a defendant accused of committing various sexual offenses against his minor daughter attempted to obtain through discovery a file maintained by Children and Youth Services (CYS) pertaining to the charges. CYS refused to comply with the subpoena, claiming that the records were privileged under 11 Pa.C.S. § 2215.[10] The United States Supreme Court in *Ritchie* concluded that the defendant's due process rights had been denied despite the Commonwealth's asserted compelling interest in the confidentiality of the records sought. The Court reasoned that the Commonwealth's interest in protecting the files could not be compelling, as suggested, because the statute itself provided for disclosure of the files in certain limited circumstances.[11] *Id.* at 59, 107 S.Ct. at

**9.** In fact, Aultman himself conducted a portion of the cross-examination and was given a significant amount of leeway by the court despite his lack of organization.

**10.** The statute provides, in pertinent part, as follows:

**§ 2215. Confidentiality of records**

(a) Except as provided in section 14 [relating to the record-keeping procedure], reports made pursuant to this act including but not limited to report summaries of child abuse made pursuant to section 6(b) [relating to police and other written and oral reports of child abuse] and written reports made pursuant to section 6(c) as well as any other information obtained, reports written or photographs or x-rays taken concerning alleged instances of child abuse in the possession of the department, a county children and youth social service agency or a child protective service shall be confidential and shall only be made available to [certain entities listed, in which a defendant or defense counsel in a child abuse action is not included].

11 Pa.C.S. § 2215(a).

**11.** These include a duly authorized official of a child protective service; a physician examining or treating a child; a guardian *ad litem* for the child; a duly authorized official of the Department of

1002. The recognition by the legislature of those instances of disclosure, the Court found, certainly raised an inference that the defendant could be permitted access to information "material" to his case. *Id.*

The instant case is easily distinguishable from *Ritchie.* First, as discussed *supra,* we here are concerned with the absolute privilege which prohibits the disclosure of records under any circumstances absent the victim's consent. *See id.* at 57, 107 S.Ct. at 1001. The enactment of an absolute privilege indicates the Commonwealth's compelling interest in protecting the confidentiality of the rape victim's records. The broadly drawn privilege is nevertheless narrowly tailored to achieve the compelling interest in protecting the victim's privacy so that her treatment and recovery process will be expedited. *See supra,* 528 Pa. 516, 602 A.2d 1295. Therefore, defendant's federal constitutional rights have not been violated.

■ Defendants also claim that the recent case of *Commonwealth v. Lloyd,* 523 Pa. 427, 567 A.2d 1357 (1989), mandates the conclusion that the denial of defense counsel's access to these records violates the defendants' rights under the state constitution. In *Lloyd,* the defendant sought to obtain from Medical College of Pennsylvania the psychotherapeutic records of a six-year-old girl whom he allegedly had raped. The trial court denied his request. This Court reversed, holding that defendant's state constitutional rights to confrontation and compulsory process required that he be permitted to inspect the records. The Court voted, however, that the *Lloyd* case, unlike the *Ritchie* case, did not involve a statutory privilege. Rather, the Court in *Lloyd* was concerned with a common law privilege which could not defeat a defendant's constitutional rights.

Public Welfare; a court of competent jurisdiction pursuant to a court order; a standing committee of the General Assembly to ascertain legislative oversight; the Attorney General; federal auditors if required for federal financial participation; law enforcement officials investigating or receiving reports of abuse; county commissioners for investigative purposes; and a mandated reporter (i.e. physicians, social workers, teachers) of child abuse who made a report. 11 Pa.C.S. § 2215(a)(1)-(a)(12).

282

Implicit in the distinction drawn by the *Lloyd* court is the recognition that the existence of a statutory privilege is an indication that the legislature acknowledges the significance of a particular interest and has chosen to protect that interest. As the Supreme Court stated in *Ritchie, supra,*

> Although we recognize that the public interest in protecting this type of sensitive information is strong, we do not agree that this interest necessarily prevents disclosure in all circumstances. This is not a case where a state statute grants CYS the absolute authority to shield its files from all eyes. *Cf.* 42 Pa Cons Stat § 5945.1(b) (1982) (unqualified statutory privilege for communications between sexual assault counselors and victims). Rather, the Pennsylvania law provides that the information shall be disclosed in certain circumstances, including when CYS is directed to do so by court order. PA Stat Ann, Title 11, § 2215(a)(5) (Purdon Supp 1986). Given that the Pennsylvania Legislature contemplated some use of CYS records in judicial proceedings, we cannot conclude that the statute prevents all disclosures in criminal prosecutions. In the absence of any apparent state policy to the contrary, we therefore have no reason to believe that relevant information would not be disclosed when a court of competent jurisdiction determines that the information is "material" to the defense of the accused.

*Ritchie, supra,* 480 U.S. at 57–58, 107 S.Ct. at 1001–02. As previously noted, the statutory privilege instantly at issue provides even greater protection than did the statute asserted in the *Ritchie* case. Therefore, an objection based on the protections afforded by the state constitution must also fail.

Accordingly, the orders of the Superior Court are reversed.

McDERMOTT, J., did not participate in the consideration or decision of this case.

LARSEN, J., files a concurring opinion in which PAPADAKOS, J., joins.

ZAPPALA, J., files a dissenting opinion.

LARSEN, Justice, concurring.

While I agree with the result reached by the majority in this case, I write separately to emphasize further that enactment of this statute was specifically intended to abrogate the effects of the majority opinion in *In the Matter of Pittsburgh Action Against Rape*, 494 Pa. 15, 428 A.2d 126 (1981) (*"PAAR"*). A majority of this Court in *PAAR* rejected the claim that an absolute privilege existed for all communications between rape crisis center personnel and rape victims. Instead, the majority held that records of a rape victim's statements to rape crisis counselors may be subpoenaed and disclosed at trial. *Id.*, 494 Pa. at 26–28, 428 A.2d at 131–132.

In my dissent in *PAAR*, I vigorously advocated expanding the common law to recognize an absolute testimonial privilege for all communications between rape victims and rape crisis center counselors. I pointed out that a victim of rape "suffers an invasion of her bodily privacy in an intensely personal and unsettling manner, triggering a number of emotional and psychological reactions running the gamut from shock, fear, distrust and anger to guilt, shame and disgust." *Id.*, 494 Pa. at 38, 428 A.2d at 138 (Larsen, J., dissenting). I stated that the term "rape trauma syndrome" has evolved to encompass this recurring pattern of post-rape symptoms that is essentially unique to the rape victim.

I further stressed that the need for and benefits of counseling for a rape victim are extraordinary, and the most accessible counseling for a rape victim is the rape crisis counselor. Without doubt, I stated, confidentiality is essential to the relationship between the rape victim and rape crisis counselor because it encourages victims to seek treatment and helps victims realize the full benefit of the psychotherapeutic relationship. In conclusion, I appealed to the legislature "to take cognizance of the rape victim's plight and to act promptly and compassionately in legislatively enacting a rape victim/rape crisis counselor testimoni-

al privilege." *Id.*, 494 Pa. at 62–63, 428 A.2d at 150 (Larsen, J., dissenting).

The legislature was quick to respond. Within a year, the legislature had enacted the statute at issue, which created such a testimonial privilege.[1] In a statement made part of the legislative record, State Representative John Alden essentially adopted my dissent in *PAAR* and revealed that the intent of the statute was to reverse the effects of *PAAR*. Statement of Representative Alden, 1981 Pa.Legislative Journal—House, pp. 1738–39, (October 14, 1981). Thus, the legislature was absolutely clear in its intent to undo the disastrous effects of the majority decision in *PAAR* by adopting my dissent, and therefore, the only plausible interpretation of this statute is that it provides an absolute testimonial privilege for confidential communications between rape victims and their rape crisis counselors.

PAPADAKOS, J., joins in this concurring opinion.

ZAPPALA, Justice, dissenting.

The hallowed principle that one remains innocent until proven guilty is hollow indeed if one's constitutional rights must always bend to a statutory privilege. When a defendant has shown a legitimate need for access to communications, the testimonial privilege expressed in 42 Pa.C.S.A. § 5945.1 must yield to the constitutional rights of a criminal defendant to due process and to confront his accuser. In the absence of any demonstration by the defendant that the victim's communications with the counselor would provide a source of impeachment, I would not breach the privilege. The majority, however, forecloses all possibility that the defendant may obtain a victim's statements even upon a legitimate showing of need for access. I am gravely concerned that we have lost all sense of what our constitutional rights guarantee.

The majority's sanctification of the statutory privilege is at great cost to our constitutional rights. I am sympathetic

---

1. History of Senate Bills and Resolutions, Sessions of 1981 and 1982 (Final Issue).

to the physical and emotional trauma suffered by a rape victim, but I am not willing to sacrifice the guarantees of our Constitution to assuage the harm. I commend the analysis of this Court in *In The Matter of Pittsburgh Action Against Rape*, ("PAAR"), 494 Pa. 15, 428 A.2d 126 (1981). It is no less compelling today:

There is an undoubtable public interest in helping victims of rape to cope with inevitable disruption of emotional stability caused by the physical assaults they suffer. There is an equally compelling public interest in encouraging victims of violent crime to come forward. We would be closing our eyes to reality were we to discount the value of rape crisis centers in fostering these vital public interests.

It must be remembered, however, that our system of criminal justice is a search for truth. As the Supreme Court of the United States observed, "disclosure, rather than suppression, of relevant materials ordinarily promotes the proper administration of criminal justice." *Dennis v. United States*, 384 U.S. 855, 870, 86 S.Ct. 1840, 1849, 16 L.Ed.2d 973 (1966). Accord, e.g., *Lewis v. Court of Common Pleas*, 436 Pa. 296, 304 n. 4 260 A.2d 184, 189 n. 4 (1969). So too, the American Bar Association Project on Minimum Standards for Criminal Justice states: "Where life, liberty and protection of communities from crime are the stakes, gamesmanship is out of place." Standards Relating to Discovery and Procedure Before Trial § 1.1 Comment at p. 31 (Approved Draft 1970).

I agree with the words of Justice Simon of the Supreme Court of Illinois in his Dissenting Opinion in *The People of the State of Illinois v. Foggy*, 121 Ill.2d 337, 118 Ill.Dec. 18, 521 N.E.2d 86 (1988):

In determining which interests and relationships should be protected by privilege, and to what extent they should be protected, courts and legislatures must balance the State's interest in the privilege against the constraints the privilege places on the fair and effective administration of justice. In the present case, the State's interest in providing confidential counseling services to the victims

of rape must be weighed against the defendant's constitutional rights to due process of law and to confrontation of witnesses against him. Although the State's interest in this case is a strong one and undoubtedly justifies a statute conferring some privilege protection on counseling records ... it is not strong enough to sustain an absolute privilege which renders meaningless the defendant's constitutional rights.

The legislative action of enacting the privilege for a sexual assault counselor does not dissuade me from concluding that the Pennsylvania Constitution permits a defendant to obtain exculpatory evidence. The in-camera review procedure developed in *PAAR* successfully balanced the rights of the accuser and the rights of the accused. The accuser was protected from unwarranted intrusions into the counseling process and the accused had access to statements bearing on the facts of the alleged offense.

That the legislative response to *PAAR* was swift and empathetic to the rape victim does not relieve this Court of our responsibility to declare unconstitutional legislation that denies a defendant his constitutional rights. The Constitution of this Commonwealth is the absolute—a legislative enactment of a statutory privilege is not.