IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Commonwealth of Pennsylvania    :
    :
v.    :    No. 1259 C.D. 2021
    :    Argued: November 15, 2022
Nicholas Serrbocco,    :
    Appellant    :

BEFORE:    HONORABLE PATRICIA A. McCULLOUGH, Judge
    HONORABLE LORI A. DUMAS, Judge
    HONORABLE MARY HANNAH LEAVITT, Senior Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY SENIOR JUDGE LEAVITT    FILED:    February 3, 2023

Nicholas Serrbocco appeals his summary conviction for harboring a dangerous dog under Section 502-A(a)(1)(ii) of the Dog Law.[1] At his trial *de novo* before the Court of Common Pleas of Montgomery County (trial court), two prosecution witnesses testified by Zoom. On appeal, Serrbocco argues that he was denied his constitutional right to confront these two witnesses in violation of the

---

[1] Act of December 7, 1982, P.L. 784, *as amended*, 3 P.S. §459-502-A(a)(1)(ii). Section 502-A was added by the Act of May 31, 1990, P.L. 213. It states, in relevant part, as follows:

> (a) Summary offense of harboring a dangerous dog.--Any person who has been attacked by one or more dogs, or anyone on behalf of the person, a person whose domestic animal, dog or cat has been killed or injured without provocation, the State dog warden or the local police officer may file a complaint before a magisterial district judge, charging the owner or keeper of a dog with harboring a dangerous dog. The owner or keeper of the dog shall be guilty of the summary offense of harboring a dangerous dog if the magisterial district judge finds beyond a reasonable doubt that the following elements of the offense have been proven:
>
> > (1) The dog has done any of the following:
> >
> > * * * *
> >
> > > (ii) Killed or inflicted severe injury on a domestic animal, dog or cat without provocation while off the owner's property.

3 P.S. §459-502-A(a)(1)(ii).

Sixth Amendment of the United States Constitution[2] and Article I, Section 9 of the Pennsylvania Constitution.[3]  For the reasons to follow, we affirm.

Serrbocco is the owner of a pitbull, Cali, that attacked and inflicted a serious injury on another dog.  At the time of the attack on December 11, 2018, Cali was unrestrained and not on Serrbocco's property.

On December 17, 2018, an animal control officer issued Serrbocco a citation for harboring a dangerous dog under Section 502-A(a)(1)(ii) of the Dog Law.  On July 22, 2019, Serrbocco was found guilty *in absentia* before a Magisterial District Judge and sentenced to pay $140.74 in fines, costs, and restitution.

Thereafter, in late 2020, Serrbocco appealed his summary conviction *nunc pro tunc*, for the stated reasons that he did not receive instructions on how to appeal his summary conviction, the public defender's office denied his application for representation, and he was unable to appear at the hearing on July 22, 2019, due to his job.  *See* Renewed Motion for Summary Appeal *nunc pro tunc* at 4-5, ¶¶26-27.  On August 18, 2021, the trial court granted Serrbocco's motion for an appeal *nunc pro tunc*.

The summary appeal hearing was held on September 22, 2021.  Prior to trial, the Commonwealth informed the trial court that two of its witnesses, Eve Brewer and Angela Biesecker, who had been issued subpoenas, would not be able to appear in person and would testify by Zoom.  Serrbocco's counsel objected, stating that because the standard of proof was "beyond a reasonable doubt," the witnesses needed "to be here in person."  Notes of Testimony, 9/22/2021, at 3 (N.T. __).  Counsel explained that he had documents to show the witnesses and "[i]t just

---

[2] U.S. CONST. amend. VI.  It states, in relevant part:  "In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him[.]"  *Id*.

[3] PA. CONST. art. I, §9.  It states, in part:  "In all criminal prosecutions the accused hath a right . . . to be confronted with the witnesses against him[.]"  *Id*.

doesn't work" to hold up exhibits to a camera and "also to observe their demeanor and what they say." N.T. 3-4. The trial court overruled Serrbocco's objection.

The Commonwealth proceeded with its case, presenting both documentary and testimonial evidence. The first witness, Brewer, testified by Zoom and stated that on the evening of December 11, 2018, she returned home at approximately 6:30 p.m. when she heard "a blood curdling scream along with what was a growl, a growl and a scream from an animal." N.T. 8. Realizing "that it was a dog fight," she ran outside and found Biesecker with her three dogs "tangled up" with a pitbull. N.T. 8. One of Biesecker's dogs, Little Bit, had been attacked in the face by the pitbull, which Brewer kicked in order to release Little Bit. Brewer stated that Biesecker's three dogs were on leashes, and the pitbull was shaking Little Bit in what she described as "a death shake." N.T. 18.

Biesecker, who also testified by Zoom, stated that on December 11, 2018, she was walking her three dogs on the sidewalk, when Serrbocco's dog came at her and her dogs, leaving her dog, Little Bit, "horrifically injured" on his nose and mouth. N.T. 24. At the time of the attack, the pitbull was not leashed. Biesecker stated that the pitbull grabbed Little Bit by his muzzle, nose and mouth. After the attack, Little Bit was treated at the Malvern Veterinary Center for a broken lower jaw and gum damage, which caused the dog to lose teeth. Little Bit's treatment cost over $2,500.

On cross-examination, Biesecker testified that on December 11, 2018, she took her dogs for a walk around 6:00 p.m. Although it was dark outside, she could still see where she was walking. Biesecker testified that her dogs did not bite the pitbull. Biesecker clarified that the surgery to Little Bit's jaw impeded blood flow to his gums, and this caused the loss of teeth. The veterinarian did not find any puncture marks on Little Bit, just a broken jaw. Biesecker stated that on December

3

18, 2018, she sent a letter to Donna Serrbocco, in which Biesecker asserted that Ms. Serrbocco was responsible for the pitbull's attack since the dog lived in Ms. Serrbocco's home.

Tracy Daywalt, an animal control officer for 23 townships in Montgomery County, Pennsylvania, testified in person that she received a call about the dog incident on December 11, 2018. She went to Serrbocco's residence and was told by Serrbocco and a woman at the residence that "the dog got out and went across the street and there was a scruffle between the dogs[.]" N.T. 53. They stated that their pitbull, Cali, was not bitten.

Daywalt testified that in her report for Montgomery County Health Department, she listed the injured animal, Little Bit, as belonging to Biesecker, with an injury to its mouth. She did not see the injured dog because it was at the Veterinary Center. She listed Cali as belonging to Serrbocco because he stated that he owned the dog. Daywalt asked for proof of rabies vaccination and licensing for the dog, but Serrbocco could not produce such documentation.

Jon Daywalt, an animal control officer for Pottstown, testified in person that it is his responsibility to enforce animal control laws. Based upon the information he received from Tracy Daywalt, and after speaking with the dog warden, he issued Serrbocco a citation for harboring a dangerous dog.

In response, Serrbocco introduced testimonial and documentary evidence. Lindsey Tuzzi, Serrbocco's girlfriend, testified that at approximately "9:15 at night," on December 11, 2018, she was outside with the pitbull, Cali, on the sidewalk. N.T. 70. When Biesecker came around the corner in front of Serrbocco's house with her three dogs, Biesecker's dogs started biting Cali on the stomach. Tuzzi testified that she never saw Cali bite or pick up any of Biesecker's dogs. Tuzzi stated that Serrbocco and his brother "came out and picked Cali up." N.T. 72. Cali

4

had a bite on her side. Tuzzi testified that Serrbocco's brother was the owner of Cali, and Serrbocco only helped "pay for the food." N.T. 74. Tuzzi admitted that when she took Cali out, Cali was not leashed.

Serrbocco's mother, Donna Serrbocco, testified that she is the owner of Cali. She did not witness the incident on December 11, 2018.

At the conclusion of the trial, the trial court found Serrbocco guilty of harboring a dangerous animal. The trial court stated that this case came down "to credibility among the witnesses who testified." N.T. 87. The trial court explained that Little Bit sustained a broken jaw, which was a significant injury. It credited Brewer's testimony that she retrieved two dogs from the ruckus occurring in the middle of the street and that the pitbull was not on a leash. Her testimony was confirmed by Tuzzi and by the animal control officer's investigation report. As to the ownership of the pitbull, the trial court credited Daywalt's testimony that Serrbocco told her that the pitbull belonged to him. The trial court sentenced Serrbocco to pay a fine of $500 and restitution to Biesecker in the amount of $2,500. Serrbocco appealed.[4]

On appeal,[5] Serrbocco argues that he was denied his right to confrontation under both the United States Constitution and the Pennsylvania Constitution when the trial court allowed two of the Commonwealth's witnesses to testify by Zoom. The Commonwealth responds that Serrbocco waived this issue by failing to preserve it at trial.

---

[4] Serrbocco initially appealed to the Superior Court, which transferred the case to this Court.

[5] Our review of a trial court's conviction following a trial *de novo* determines whether the trial court's findings are supported by substantial evidence, whether the trial court erred as a matter of law, or whether the trial court abused its discretion. *Commonwealth v. Hake*, 738 A.2d 46, 47 n.4 (Pa. Cmwlth. 1999).

By way of background, the Sixth Amendment to the United States Constitution and Article I, Section 9 of the Pennsylvania Constitution guarantee a criminal defendant the right to confront the witnesses that testify against him, including the right to cross-examine those witnesses. *See* U.S. CONST. amend. VI; PA. CONST. art. I, §9. As our Supreme Court has explained, the right of confrontation "provides two types of protections for a criminal defendant: the right physically to face those who testify against him, and the right to conduct cross-examination." *Commonwealth v. Wilson*, 602 A.2d 1290, 1296 (Pa. 1992).

To preserve a claim of error regarding the admission of evidence, the party must specifically object to the admission of evidence at trial and state the specific grounds for the objection. *Commonwealth v. Smith*, 213 A.3d 307, 309 (Pa. Super. 2019). Pennsylvania Rule of Evidence 103(a), Rulings on Evidence, provides, in pertinent part, as follows:

> (a) Preserving a Claim of Error. A party may claim error in a ruling to admit or exclude evidence only:
>
> > (1) if the ruling admits evidence, a party, on the record:
> >
> > > (A) *makes a timely objection*, motion to strike, or motion *in limine*; and
> > >
> > > (B) *states the specific ground*, unless it was apparent from the context[.]

PA.R.E. 103(a) (emphasis added). A general objection is insufficient and "if the ground upon which an objection is based is specifically stated, all other reasons for its exclusion are waived, and may not be raised post trial." *Commonwealth v. Stoltzfus*, 337 A.2d 873, 881 (Pa. 1975).

"'The absence of a contemporaneous objection below constitutes a waiver' of the claim on appeal." *Commonwealth v. Rodriguez*, 174 A.3d 1130, 1145

(Pa. Super. 2017) (quoting *Commonwealth v. Powell*, 956 A.2d 406, 423 (Pa. 2008)). The Pennsylvania Supreme Court has stated:

> [I]t is axiomatic that issues are preserved when objections are made timely to the error or offense. *See Commonwealth v. May*, [] 887 A.2d 750, 761([Pa.] 2005) (holding that an "absence of contemporaneous objections renders" an appellant's claim waived); and *Commonwealth v. Bruce*, [] 916 A.2d 657, 671 ([Pa. Super.] 2007), *appeal denied*, [] 932 A.2d 74 ([Pa.] 2007) (holding that a "failure to offer a timely and specific objection results in waiver of" the claim). Therefore, we shall consider any issue waived where Appellant failed to assert a timely objection.

*Commonwealth v. Baumhammers*, 960 A.2d 59, 73 (Pa. 2008). "Issues not raised in the trial court are waived and cannot be raised for the first time on appeal." PA. R.A.P. 302(a). This includes constitutional issues. *Commonwealth v. Jefferson*, 256 A.3d 1242, 1252 (Pa. Super. 2021).

Similarly, a new theory for an objection made at trial cannot be raised for the first time on appeal. *Commonwealth v. Cline*, 177 A.3d 922, 927 (Pa. Super. 2017). "The rule is well settled that a party complaining, on appeal, of the admission of evidence in the [c]ourt below will be confined to the specific objection there made." *Commonwealth v. Cousar*, 928 A.2d 1025, 1041 (Pa. 2007) (quoting *Commonwealth v. Boden*, 159 A.2d 894, 900 (Pa. 1960)).

With this background, we address the Commonwealth's argument that Serrbocco has waived the issue of his right to confront the witnesses against him.

At the September 22, 2021, summary appeal trial, the following discussion occurred:

> [Commonwealth]: Your Honor, I did request earlier permission for an Eve Brewer to appear by Zoom. She had just given birth recently two weeks ago. And when I went out to check for my witnesses, I notice[d Biesecker] was not here. I did call her. I am not exactly sure what happened or where the

7

miscommunication on her end in terms of her not being here in person. She has logged into Zoom. I do understand I think the defense is objecting to her appearing by Zoom and I will let defense speak to that.

[Serrbocco's Counsel]: Yes, that is correct, Your Honor. I actually object to any witness appearing via Zoom. Primarily in the statute here that is governing this, Title 3 Pennsylvania Statute 459-502-A, it has the standard written clearly that this is to be found beyond a reasonable doubt. This is the equivalent of a bench trial. This is not a traffic citation. And I highly object to any witnesses appearing by Zoom. They need to be here in person.

I have exhibits that I need to show to them and I have tried holding up exhibits to the camera within this past year. It just doesn't work. And then also to observe their demeanor and what they say. *With this high standard of beyond a reasonable doubt to have anybody appear via Zoom at this level I think is inappropriate.* It is one thing for preliminary hearings, because there is nothing at preliminary hearings that can't be fixed at a trial honestly, but right now this is the trial. So I would object to either Ms. Brewer or Ms. Biesecker appearing via Zoom. It would not be appropriate for just considering this is a bench trial.

\* \* \* \*

[Commonwealth]: . . . When I called [Biesecker] moments ago to ask where she was, my understanding she was going to be here, she said that she thought she didn't need to appear. I am not sure where the confusion was. I did just email her the Zoom link to log in. I let [Serrbocco's counsel] know. I recognize she is objecting to that. I mean we have been doing these Zoom hearings throughout the pandemic and it has been sufficient for that purpose beyond a reasonable doubt.

The Court: As the finder of fact, the beyond a reasonable doubt is up to me, and at the end of this if I have doubt, I will say that, but I am not going to presume that prior to the start of trial. So I am going to overrule the objection and we will proceed with this matter. I would think that you all would want some finality regardless. If your concern is the showing of your evidence, we can share it on Zoom. That comes across clearly.

8

[Serrbocco's Counsel]: Your Honor, how would we in the practical sense share it on Zoom?

The Court: You give it to my clerk. She will scan it and put in something and put it up there.

[Serrbocco's Counsel]: I still – would hold my objection, Your Honor –

The Court: I note your objection. The objection is noted, but we are going to proceed with this. . . . This trial is going on today.

[Serrbocco's Counsel]: It is clear, Your Honor, we don't object to the trial proceeding. It is just –

The Court: I heard you the first time you said that.

[Serrbocco's Counsel]: Okay.

N.T. 3-6 (emphasis added). Following his conviction, Serrbocco argued, in a post-sentence motion, that the trial court's decision to overrule his objection to the Zoom testimony of two of the Commonwealth's witnesses violated his constitutional right to confront witnesses against him. The trial court denied Serrbocco's motion.

In its opinion pursuant to Pennsylvania Rule of Appellate Procedure 1925(a), PA. R.A.P. 1925(a), the trial court stated that Serrbocco waived the issue of his right to confront witnesses. It explained that, at trial, Serrbocco did not cite the confrontation clause of the United States or Pennsylvania Constitutions as the basis of his objection. Rather, the objection was based on the argument that the standard of beyond reasonable doubt could not be satisfied by having witnesses testify by Zoom.

The record confirms that in his objection to witness testimony by Zoom, Serrbocco did not raise the right of confrontation or mention the Sixth Amendment to the United States Constitution or Article I, Section 9 of the Pennsylvania Constitution. Even after the trial court overruled Serrbocco's objection based upon the standard of beyond reasonable doubt, Serrbocco did not raise his constitutional

9

right to confrontation. Rather, Serrbocco discussed the logistics of showing the exhibits to the witnesses.

However, Serrbocco contends that the trial court misunderstood his objection. He explains that the objection based upon the standard of proof being "beyond a reasonable doubt" was an argument that he was entitled to the full panoply of constitutional rights guaranteed to criminal defendants, including the right to confrontation. Serrbocco Brief at 10. Further, his assertion that the "[witnesses] need to be here in person" was an inarticulately worded objection to the right to confront witnesses. *Id.*

We are not persuaded. An objection to witness testimony by Zoom based on standard of proof does not encompass the right to confront witnesses against the defendant. Beyond a reasonable doubt relates to the "measure of persuasion by which the prosecution must convince the trier of all the essential elements of guilt." *In re Winship*, 397 U.S. 358, 361 (1970) (quotation omitted). "Due process considerations protect those accused of committing a crime from conviction 'except upon proof beyond a reasonable doubt.'" *Commonwealth v. Chichkin*, 232 A.3d 959, 970 (Pa. Super. 2020) (quoting *In re Winship*, 397 U.S. at 364). Due process is guaranteed by the Fifth[6] and Fourteenth[7] Amendments to the United States Constitution and Article I, Section 9 of the Pennsylvania Constitution.[8] *See Commonwealth v. Williams*, 733 A.2d 593, 603 (Pa. 1999) (criminal punishment requires full panoply of protections guaranteed by due process). In short, to the

---

[6] It states, in pertinent part: "No person shall . . . be deprived of life, liberty, or property, without due process of law[.]" U.S. CONST. amend. V.

[7] It states, in pertinent part: "[N]or shall any State deprive any person of life, liberty, or property, without due process of law[.]" U.S. CONST. amend. XIV.

[8] It states, in relevant part: "In all criminal prosecutions . . . nor can [the accused] be deprived of his life, liberty or property, unless by the judgment of his peers or the law of the land." PA. CONST. art. I, §9.

extent that the objection based on standard of proof raised a constitutional issue, this issue was due process of law.

However, the right to confront witnesses does not arise from the due process guarantee. Rather, it arises from the Sixth Amendment to the United States Constitution and Article I, Section 9 of the Pennsylvania Constitution. The objection to testimony by Zoom had to state a ground, and the right to confront witnesses was not stated. PA.R.E. 103(a)(1). The issue cannot be advanced for the first time in post-sentence motions or on appeal. *Brown v. Halpern*, 202 A.3d 687, 708 (Pa. Super. 2019) (party failed to preserve a claim of trial court error for overruling objection based on relevance where trial objection was based on hearsay); *cf. Doe-Spun, Inc. v. Morgan* 502 A.2d 287, 289 (Pa. Cmwlth. 1985) (finding that citing statute for the first time on appeal did not constitute a new claim of error but provided authority for the theory presented to the trial court).

We hold that Serrbocco's objection did not preserve the right to confront witnesses. His stated ground for the objection to testimony by Zoom was that such testimony would not satisfy the applicable standard of proof beyond a reasonable doubt. This issue encompasses a due process claim, but it does not encompass the right to confront witnesses. Accordingly, the order of the trial court is affirmed.

_____
MARY HANNAH LEAVITT, President Judge Emerita

11

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Commonwealth of Pennsylvania  :
                                     :
            v.               :        No. 1259 C.D. 2021
                                       :
Nicholas Serrbocco,           :
                  Appellant   :

## ORDER

AND NOW this 3rd day of February, 2023, the order of the Court of Common Pleas of Montgomery County dated September 22, 2021, in the above-captioned matter, is AFFIRMED.

_____
MARY HANNAH LEAVITT, President Judge Emerita