**V.B.T. and C.E.T., His Wife, In Their Own Right and on Behalf of N.T.**

v.

**FAMILY SERVICES OF WESTERN PENNSYLVANIA and James Pedetella and Linda Pedetella (Two Cases).**

**Appeal of James PEDETELLA and Linda Pedetella (now known as Linda Wagner) (at 1797).**

**Appeal of FAMILY SERVICES OF WESTERN PENNSYLVANIA (at 402).**

Superior Court of Pennsylvania.

Argued Feb. 27, 1997.

Filed Jan. 22, 1998.

John W. Jordan, Pittsburgh, for James and Linda Pedetella.

Irving M. Green and John D. Ceraso, New Kensington, for V.B.T. and C.E.T.

Alan B. Rosenthal, Pittsburgh, for Family Services.

Georgene Siroky, Pittsburgh, for M.F., participating party.

Before BECK, FORD ELLIOTT and HESTER, JJ.

BECK, Judge:

We address three issues of first impression. The first two issues concern the qualified privileges protecting the confidentiality of records created pursuant to the Child Protective Services Law, 23 Pa.C.S. §§ 6301 et seq. ("the CPSL") and of court records of proceedings under the Juvenile Act, 42 Pa. C.S. §§ 6301–6365. We determine that these qualified privileges cannot be overcome by a plaintiff's interests in prosecuting a claim that the defendants were negligent in placing, treating, caring for and controlling a foster child who allegedly injured plaintiff.

We conclude that the interests protected by the privilege outweigh those of a plaintiff seeking money damages in a negligence action.

We also consider the privilege protecting confidential communications between a domestic violence counselor/advocate and a victim of domestic violence, created by the Protection from Abuse Act, 23 Pa.C.S. §§ 6101–6117. We determine that this privilege is absolute.

Accordingly, we conclude that the trial court erred in holding that each of these privileges must give way to the interests of plaintiffs in pursuing their negligence action, and we reverse its orders permitting discovery of matters covered by the privileges.

This matter arises from an action filed by V.B.T. and C.E.T. The plaintiffs seek damages for physical and sexual abuse which their young daughter suffered, allegedly at the hands of M.F., a foster child living in the home of James and Linda Pedatella, neighbors of the plaintiffs. M.F. had been placed with the Pedatellas by Family Services of Western Pennsylvania ("Family Services"), a social services agency under contract to Westmoreland County.

In their complaint, the plaintiffs named both Family Services and the Pedatellas as defendants. Claiming that M.F., who had herself been a victim of physical and sexual abuse prior to entering the foster care system, had a known propensity to abuse other children, the plaintiffs asserted that Family Services had been negligent in several respects: in placing M.F., an abused child, in a foster home located in an area where there were many other children despite its knowledge that abused children have a propensity to abuse other children; in failing to train the foster parents to be alert for and to control M.F.'s propensity to abuse other children; in failing to provide adequate treatment for M.F. so as to minimize the likelihood that she would abuse other children; and in failing to warn the parents of other neighborhood children about M.F.'s dangerous propensities.

With respect to the Pedatellas, the complaint asserted negligence in: continuing to

act as foster parents to M.F. knowing of her propensity to abuse other children in the neighborhood; failing to seek more effective treatment for M.F. so as to minimize the danger to other children; failing to control and supervise M.F.; and failing to warn other parents in the neighborhood of M.F.'s dangerous propensities.[1]

The Pedatellas declined to file an answer to the complaint, instead seeking a protective order relieving them of the obligation to file an answer, to respond to written interrogatories and to be deposed on matters pertaining to their fostering of M.F.[2] They claimed that answering the plaintiffs' pleadings and discovery requests would require them to divulge privileged information regarding the child's "condition and adjustment."[3]

Family Services, in contrast, filed an answer to the complaint in which they denied the allegations of negligence. However, in response to service of a notice of deposition for the stated purpose of exploring "Family Services' knowledge of [M.F.'s] personal and family history," Family Services also sought a protective order, asserting that the matters to be explored in the deposition were privileged.[4]

Both motions for protective order were denied by the trial court. The court found that strict construction of the agreements and statutes relied upon would permit the Pedatellas and Family Services to be protect-

---

1. Underlying the plaintiffs' complaint is the premise that abused children are more likely than others to inflict abuse upon other children. Family Services contests this assumption, noting that studies have not shown that sexually abused children display any statistically predictable behaviors as a result of the abuse and citing *Commonwealth v. Dunkle*, 529 Pa. 168, 602 A.2d 830 (1992)(expert testimony regarding "Child Abuse Syndrome" and behaviors displayed by child consistent with that syndrome may not be used to bolster child's claims of sexual abuse). This dispute may have some bearing upon the relevance of evidence of M.F.'s history of abuse, but we need not decide that question here, as the issue of relevance is not before us. Rather, we address only the issue of privilege which was the basis for the appellants' motions for protective orders and the trial court's rulings on those motions.

 We also note that the issue of whether Family Services and/or the Pedatellas owed a duty of care to members of the public such as the plaintiffs in connection with the placement, treatment and care of M.F. is not before us at this time. See *J.E.J. v. Tri–County Big Brothers/Big Sisters*, 692 A.2d 582 (Pa.Super.1997) (defendant organization did not owe duty to members of general public to report to authorities child abuse committed by one of its volunteers).

2. The Pedatellas did submit to deposition, but only subject to a stipulation permitting them to refuse to answer any questions which related to the identity, condition or matters affecting the adjustment of M.F. Their motion for protective order sought to prevent them from being required to answer such questions in subsequent depositions or other discovery.

 The propriety of using a motion for protective order to attempt to avoid the necessity of filing a responsive pleading has not been questioned by the parties to this appeal, and we offer no opinion on that issue.

3. The claim that all information concerning the child's condition and adjustment is privileged was based upon the language of private agreements between the Pedatellas and Family Services, entered into at the time the Pedatellas agreed to become foster parents. In seeking a protective order in the trial court, the Pedatellas asserted *inter alia* that the confidentiality provisions of these private agreements created a privilege that protected "information relating to the identity, condition and matters affecting the adjustment of the foster child." Motion for Protective Order at 2. On appeal, the Pedatellas have not pursued their claim that the private agreements created a privilege, focusing instead on their claim that the statutorily created privileges relied upon by Family Services extend to them as foster parents. Although we therefore need not decide whether the agreements created any separate privilege, we note that we are aware of no authority, and the record does not reveal that the Pedatellas cited any in the trial court, for the proposition that a privilege may be created by private agreement. See *Lepley v. Lycoming County Court of Common Pleas*, 481 Pa. 565, 572–73, 393 A.2d 306, 309–10 (1978) *quoting Branzburg v. Hayes*, 408 U.S. 665, 688, 92 S.Ct. 2646, 2660, 33 L.Ed.2d 626 (1972), *quoted in U.S. v. Nixon*, 418 U.S. 683, 709, 94 S.Ct. 3090, 3108, 41 L.Ed.2d 1039 (1974) (" The public ... has a right to every man's evidence,' except for those persons protected by a *constitutional, common-law or statutory* privilege." (emphasis added)).

4. Privileged information is, of course, protected from discovery. See Pa.R.C.P. 4003.1(a) ("[A] party may obtain discovery of any matter, *not privileged*, which is relevant to the subject matter involved in the pending action ....")(emphasis added); Pa.R.C.P. 4011 ("No discovery or deposition shall be permitted which ... (c) relates to matter which is privileged....").

ed from the plaintiffs' discovery requests, but that such protection would cripple the plaintiffs' ability to prove their case to a trier of fact. The court reasoned, "This court is of the opinion that the right on the part of the Plaintiffs to discover relevant materials in pursuit of their cause of action must prevail. It is both unwise and unjust to interpose a barrier of confidentiality to frustrate to bring to issue a justiciable tort." Trial Court Opinion, August 30, 1996 at 3; Trial Court Opinion, October 8, 1996 at 4.[5] Both the Pedatellas and Family Services timely appealed the denial of their respective motions, and their appeals have been consolidated for our review.[6]

On appeal, no party has questioned the trial court's finding that the matters of which the plaintiffs seek discovery fall within the ambit of privileges created by several statutory sections: the Sexual Assault Counselor Privilege, 42 Pa.C.S. § 5945.1; the confidentiality provisions of the Protection from Abuse Act, 23 Pa.C.S. §§ 6101—6117 ("the PFAA"), which protect communications between victims of domestic violence and domestic violence counselor/advocates, 23 Pa.C.S. § 6116; the provisions of the Juvenile Act, 42 Pa.C.S. §§ 6301—6365, which limit access to court records, 42 Pa.C.S. § 6307; and the provisions of the Child Protective Services Law, 23 Pa.C.S. §§ 6301—6385

("the CPSL"), protecting records created pursuant to that law, 23 Pa.C.S. §§ 6339, 6340 and 6349. Nor has a challenge been raised to the trial court's conclusion that application of these privileges in this case should result in the grant of the relief requested by the Pedatellas and Family Services in their respective motions for protective order. Rather, the arguments of the parties focus upon the trial court's holding that, despite the applicability of these privileges, the plaintiffs' interest in prosecuting their negligence action outweighs the interests protected by the privileges. As our review of this matter is limited to the issues as framed by the parties, we, too, shall focus on the weighing of the competing interests implicated by application of the asserted privileges in this case.

## I. Sexual Assault Counselor Privilege

 With respect to the sexual assault counselor privilege, the trial court's holding is clearly in error. The privilege created by 42 Pa.C.S. § 5945.1[7] is an absolute privilege, which is not overcome even by the constitutional rights of a criminal defendant. *Commonwealth v. Wilson*, 529 Pa. 268, 602 A.2d 1290 (1992), *cert. denied*, 504 U.S. 977, 112 S.Ct. 2952, 119 L.Ed.2d 574 (1992); *Commonwealth v. Kennedy*, 413 Pa.Super. 95, 604 A.2d 1036 (1992). The interests of the plain-

---

5. The Pedatellas' motion was denied by opinion and order entered on August 30, 1996. Family Services' motion was ruled upon separately in an opinion and order entered October 8, 1996, but in its opinion on Family Services' motion, the trial court relied in part upon its opinion disposing of the Pedatellas' motion.

6. The Pedatellas appealed to this court; Family Services filed a petition for permission to appeal with the Commonwealth Court under Pa.R.A.P. 1311 which was granted by that court. Family Services' appeal was subsequently transferred to this court pursuant to Pa.R.A.P. 752 (a) in light of the Pedatellas' pending appeal on related questions of law and in order to conserve judicial resources. Upon transfer of Family Services' appeal, the two matters were consolidated before the panel of this court scheduled to consider the Pedatellas' appeal.

We review the Pedatellas' appeal, which is clearly taken from an interlocutory order, under the collateral order doctrine. This court has previously held that where ordered discovery is asserted to be in contravention of a statutory privilege, an immediate appeal is permissible be-

cause the order is separable from and collateral to the main cause of action, involves a right too important to be denied review, and would result in the right being irreparably lost if review were deferred until the entry of final judgment in the case. *See Robec, Inc. v. Poul*, 452 Pa.Super. 264, 681 A.2d 809 (1996); *Hutchison v. Luddy*, 414 Pa.Super. 138, 606 A.2d 905 (1992).

7. Section 5945.1 provides, in pertinent part:

**(b) Privilege.—**
(1) No sexual assault counselor may, without the written consent of the victim, disclose the victim's confidential oral or written communications to the counselor nor consent to be examined in any court or criminal proceeding. 42 Pa.C.S. § 5945.1(b). "Confidential communications" are defined as:
all information, oral or written, transmitted between a victim of sexual assault and a sexual assault counselor in the course of their relationship, including, but not limited to, any advice, reports, statistical data, memoranda, working papers, records or the like, given or made during that relationship.
42 Pa.C.S. § 5945.1(a).

tiffs in pursuing money damages for the alleged negligence of Family Services and the Pedatellas are clearly much less weighty than the liberty interests at stake for the defendants in *Wilson, supra,* and *Kennedy, supra.* Thus to the extent that plaintiffs' discovery requests require Family Services or the Pedatellas to disclose information contained in privileged records of M.F.'s sessions with a sexual assault counselor, as defined in 42 Pa.C.S. § 5945.1, the requests for protective orders were improperly denied.

## II. Domestic Violence Counselor/Advocate Privilege

The appellate courts of this Commonwealth have not previously had occasion to address the nature of the privilege created by the confidentiality provision of the Protection from Abuse Act, 23 Pa.C.S. § 6116. That section provides:

### § 6116. Confidentiality

Unless a victim waives the privilege in a signed writing prior to testimony or disclosure, a domestic violence counselor/advocate or a coparticipant who is present during domestic violence counseling/advocacy shall not be competent nor permitted to testify or to otherwise disclose confidential communications made to or by the counselor/advocate by or to a victim. The privilege shall terminate upon the death of the victim. Neither the domestic violence counselor/advocate nor the victim shall waive the privilege of confidential communications by reporting facts of physical or sexual assault under Chapter 63 (relating to child protective services), a Federal or State mandatory reporting statute or a local mandatory reporting ordinance.

■ We find it clear that the privilege created by this section is absolute. The language of the statute itself creates no exceptions to the privilege, and indeed explicitly provides that compliance with the mandatory reporting provisions of the Child Protective Services Law or other statutes or ordinances does not result in waiver of the privilege. Moreover, the intent of the legislature in

creating the privilege appears clear—to provide victims of domestic violence who must seek counseling through public agencies the same absolute protection for their confidences as would be accorded to individuals able to obtain counseling from a private psychiatrist or psychologist. *Compare Commonwealth v. Wilson, supra* at 275, 602 A.2d at 1294 (purpose of legislature in enacting sexual assault counselor privilege was to provide for rape crisis center clients the same confidentiality that would exist if that victim were to seek private psychotherapeutic treatment).

The language of the PFAA also makes it clear that the privilege not only prohibits testimony by the domestic violence counselor/advocate, but also forbids disclosure of all records, whether oral or written, of counseling sessions and other communications between the counselor/advocate and the client. The "confidential communications" protected from disclosure by Section 6116 of the PFAA are defined in section 6102 as "[a]ll information, whether written or spoken, transmitted between a victim and a domestic abuse counselor or advocate in the course of the relationship. The term includes information received or given by the domestic abuse counselor or advocate in the course of the relationship, as well as advice, reports, statistical data, memoranda or working papers, records or the like, given or made in the course of the relationship." 23 Pa.C.S. § 6102.

■ Accordingly, we conclude that the privilege created by the PFAA for communications between a domestic violence counselor/advocate and a victim of domestic violence is absolute and extends to records as well as oral testimony. It is thus clear that, to the extent that compliance with discovery requests would require disclosure of information derived from privileged records relating to M.F.'s relationship with a domestic violence counselor/advocate, the trial court erred in denying the protective orders requested by Family Services and the Pedatellas.[8]

---

8. We are unable to determine, on the record presently before us, what, if any, information known by Family Services and the Pedatellas has its source in protected records of M.F.'s relationship with a sexual assault counselor or domestic violence counselor/advocate. However, we need not engage in a precise application of the sexual assault counselor privilege or the domestic violence counselor/advocate privilege to the specific records and other information in the possession

### III. Records of Proceedings under the Juvenile Act

■ The Juvenile Act creates a privilege by providing that court files and records in proceedings under the Act (such as the dependency proceeding leading to M.F.'s placement) are open to inspection only by defined categories of persons and agencies. 42 Pa. C.S. § 6307.[9] These categories include individuals and institutions with a direct interest in either the specific proceedings in question or in the operation of the justice system. Plaintiffs argue that in light of the allegations of their complaint, they fall within the express provision of the statute allowing access to "any other person ... having a legitimate interest in the proceedings." 42 Pa. C.S. § 6307(7). We do not agree. Analysis of the cited language in the context of the statutory section as a whole persuades us that the term, "person with a legitimate interest in the proceedings" in the cited subsection refers only to a person who has a direct involvement with the juvenile court proceedings or the events in question, in this case the dependency proceedings. The statutory exception to confidentiality thus does not extend to an unrelated civil plaintiff seeking information about the proceedings for purposes of prosecuting a personal injury lawsuit based on a separate incident involving the foster child.[10] We therefore conclude that the plaintiffs are not entitled to access to information in records of juvenile court proceedings under the express terms of the Juvenile Act.

■ The trial court did not explicitly find that discovery was proper under the terms of the Juvenile Act. Instead it held that the plaintiffs were entitled to discovery despite the protections afforded by the Juvenile Act because their interest in pursuing tort litigation outweighed the interests protected by the privilege. Because the privilege created by the Juvenile Act is qualified, *i.e.*, it creates, by its own terms, exceptions to the confidentiality of juvenile court records, the weighing of interests engaged in by the trial court is not *per se* improper, as was the case with the absolute privileges discussed above.

Nevertheless, for reasons discussed in Section V of this opinion, we must conclude that the trial court erred as a matter of law in its analysis of the competing interests involved, and thus that denial of protective orders based on the privileges created by the Juvenile Act was improper.[11]

---

of Family Services and the Pedatellas in light of the trial court's finding, unchallenged by any party on appeal, that if the asserted privileges are applied in this case, protection from *all* requested discovery should be granted.

9. Section 6307 of the Juvenile Act provides:
All files and records of the court in a proceeding under this chapter are open to inspection only by:
(1) The judges, officers and professional staff of the court.
(2) The parties to the proceeding and their counsel and representatives, but the persons in this category shall not be permitted to see reports revealing the names of confidential sources of information contained in social reports, except at the discretion of the court.
(3) A public or private agency or institution providing supervision or having custody of the child under order of the court.
(4) A court and its probation and other officials or professional staff and the attorney for the defendant for use in preparing a presentence report in a criminal case in which the defendant is convicted and who prior thereto had been a party to a proceeding under this chapter.
(5) A judge or issuing authority for use in determining bail, provided that inspection is limited to orders of delinquency adjudications and dispositions and petitions relating thereto, orders resulting from disposition review hearings and histories of bench warrants and escapes.
(6) The Administrative Office of Pennsylvania Courts.
(7) With leave of court, any other person or agency or institution having a legitimate interest in the proceedings or in the work of the unified judicial system.

10. Language in *Grace Evangelical Lutheran Church v. Spiker*, 23 D. & C.3d 597 (1982), cited by the plaintiffs, suggests without analysis that a civil plaintiff seeking specific information from a social service agency about a juvenile's propensity for certain behavior in connection with a suit against the agency for failure to control such behavior is a person with a "legitimate interest" within the meaning of 42 Pa.C.S. § 6307. This language, of course, is not binding upon this court and we decline to follow it. Moreover, such language is mere obiter dictum in light of the *Grace Evangelical Lutheran Church* court's holding that the social service agency asserting the privilege had failed to show that the documents sought by plaintiff were part of a court record in a juvenile matter.

11. As discussed at note 8, *supra*, we need not determine the precise application of the privilege to the facts of this case in light of the parties'

## IV. Records Created Pursuant to the Child Protective Services Law

In seeking protective orders, Family Services and the Pedatellas argued that all records regarding M.F.'s history of abuse, the treatment provided to her, her response to that treatment, her placements outside the home, and her adjustment while in foster care fall within a privilege created by a scheme of statutory and regulatory provisions. They rely on sections of the Child Protective Services Law, 23 Pa.C.S. §§ 6301—6385, specifically, sections 6339, 6340, and 6349 of the CPSL, and regulations promulgated pursuant thereto.

accession to the trial court's holding that if the asserted privileges are applied in this case, protection from all requested discovery must be granted.

12. Section 6340 provides:

**Release of information in confidential reports (a) General Rule.**—Reports specified in section 6339 (relating to confidentiality of reports) shall only be made available to:

(1) An authorized official of a county agency or of an agency of another state that performs protective services analogous to those services performed by county agencies or the department in the course of the official's duties, multidisciplinary team members assigned to the case and duly authorized persons providing services pursuant to section 6370(a) (relating to voluntary or court-ordered services; findings of child abuse).

(2) A physician examining or treating a child or the director or a person specifically designated in writing by the director of any hospital or other medical institution where a child is being treated when the physician or the director or the designee of the director suspects the child of being an abused child or a child alleged to be in need of protection under this chapter.

(3) A guardian ad litem or court designated advocate for the child.

(4) An authorized official or agent of the department in accordance with department regulations or in accordance with the conduct of a performance audit as authorized by section 6343 (relating to investigating performance of county agency).

(5) A court of competent jurisdiction pursuant to a court order.

(5.1) A court of common pleas in connection with any matter involving custody of a child. The department shall provide to the court any reports and files which the court considers relevant.

(6) A standing committee of the General Assembly, as specified in section 6384 (relating to legislative oversight).

(7) The Attorney General.

Section 6339 of the CPSL, 23 Pa.C.S. § 6339, provides that "reports made pursuant to this chapter, including, but not limited to, report summaries of child abuse and written reports made pursuant to section 6313(b) and (c) (relating to reporting procedure) as well as any other information obtained, reports written, or photographs or X-rays taken concerning alleged instances of child abuse in the possession of the department or a county agency shall be confidential." Section 6340, 23 Pa.C.S. § 6340, provides that the materials described in section 6339 may be made available only to specified categories of persons, agencies and institutions.[12]

(8) Federal auditors if required for Federal financial participation in funding of agencies except that Federal auditors may not remove identifiable reports or copies thereof from the department or county agencies.

(9) Law enforcement officials of any jurisdiction as long as the information is relevant in the course of investigating cases of:

(i) Homicide, sexual abuse, sexual exploitation or serious bodily injury perpetrated by persons whether or not related to the victim.

(ii) Child abuse perpetrated by persons who are not family members.

(iii) Repeated physical injury to a child under circumstances which indicate that the child's health or welfare is harmed or threatened.

(iv) A missing child report.

(10) Law enforcement officials who shall receive, immediately after the county agency has ensured the safety of the child, reports of abuse, either orally or in writing, according to regulations promulgated by the department, from the county agency in which the initial report of suspected child abuse or initial inquiry into the report gives evidence that the abuse is:

(1) homicide, sexual abuse, sexual exploitation or serious bodily injury perpetrated by persons, whether or not related to the victim; or (ii) child abuse perpetrated by persons who are not family members.

(11) Designated county officials, in reviewing the competence of the county agency or its employees pursuant to this chapter. Officials under this paragraph are limited to the following:

(i) The board of commissioners in counties other than counties of the first class.

(ii) Mayor in a city of the first class under the act of April 21, 1949 (P.L. 665, NO. 155), known as the First Class City Home Rule Act. [53 P.S. § 13101 et seq.]

(iii) an individual serving as a county chief executive as designated by a county home rule charter or optional plan form of government pursuant to the act of April 13, 1972 (P.L. 184, NO. 62), known as the Home Rule

These categories do not include a civil plaintiff seeking discovery in pursuit of a claim for damages based upon alleged conduct of the abused child. Section 6349(b) of the CPSL, 23 Pa.C.S. § 6349(b), sets forth the penalty for unauthorized release of information as follows:

"A person who willfully releases or permits the release of any information contained in the pending complaint file, the Statewide

Charter and Optional Plans Law. [53 P.S. § 1–101 *et seq.*]

(12) A mandated reporter of suspected child abuse as defined in section 6311 (relating to persons required to report suspected child abuse) who made a report of abuse involving the subject child, but the information permitted to be released to the mandated reporter shall be limited to the following:

(i) The final status of the child abuse report following the investigation, whether it be indicated, founded or unfounded.

(ii) Any services provided, arranged for or to be provided by the county agency to protect the child.

(13) Persons required to make reports under Subchapter C.1 (relating to students in public and private schools). Information under this paragraph shall be limited to the final status of the report following the investigation as to whether the report is indicated, founded or unfounded.

(14) A prospective adoptive parent, approved by an adoption agency, when considering adopting an abused child in the custody of a county agency. The county agency having custody of the child and the adoption agency shall determine the scope and detail of information which must be provided so that the prospective parent may make an informed decision to adopt.

**(b) Release of information to subject of report.**—At any time and upon written request, a subject of a report may receive a copy of all information, except that prohibited from being disclosed by subsection (c), contained in the Statewide central register or in any report filed pursuant to section 6313 (relating to reporting procedure).

**(c) Protecting identity of person making report.**—Except for reports pursuant to subsection (a)(9) and (10), the release of data that would identify the person who made a report of suspected child abuse or the person who cooperated in a subsequent investigation is prohibited unless the secretary finds that the release will not be detrimental to the safety of that person. Law enforcement officials shall treat all reporting sources as confidential informants.

**(d) Exclusion of administrative information.**— Information maintained in the Statewide central register which was obtained from an investigating agency in relation to an appeal request

central register or the county agency records required by this chapter to persons or agencies not permitted by this chapter to receive that information commits a misdemeanor of the third degree."

Interpreting these provisions, the trial court found that if strictly construed, they would prohibit all discovery sought by plaintiffs.[13] Nevertheless, the trial court held that discovery must be permitted because

shall not be released to any person except a department official, as provided by regulation.

13. As noted above, because all parties proceed from the premise that this interpretation of the statutes is correct, we need not in the context of this appeal examine the specific information in the possession of Family Services and the Pedatellas to determine whether or how it fits within the protection of the asserted privileges. We are aware that language in *Commonwealth v. Kennedy, supra,* suggests that the scope of information protected by the CPSL may be somewhat more limited than the trial court in this case found it to be. The *Kennedy* court, however, acknowledged that therapeutic and rehabilitative information developed in conjunction with the county agency's court-ordered custody of the child may nevertheless be privileged. *Kennedy, supra* at 1042 n. 10. Because we have not been asked to decide whether the trial court's finding on the scope of the asserted privilege was correct, we need not determine whether *Kennedy* was correctly applied in this case.

Also implicit in the trial court's interpretation of the CPSL is the conclusion that although Section 6339 explicitly addresses only the duties of the Department of Public Welfare and the county agencies with regard to the confidentiality of records created pursuant to the CPSL, that duty extends to Family Services and the Pedatellas. The soundness of this conclusion has not been put at issue in this appeal. We note, however, that when viewed as a whole, the scheme of statutes and regulations regarding confidentiality of records created under the CPSL clearly supports the trial court's holding. Section 6349, which defines the sanction for disclosure of confidential information, imposes that sanction not merely upon the Department of Public Welfare or the county agencies, but upon *"a person* who willfully releases or permits the release of ... information." 23 Pa.C.S. § 6349(b). This broad language extends the duty of confidentiality to all persons who come into possession of protected information. Clearly, the employees of Family Services and the Pedatellas as foster parents are such persons.

Moreover, regulations promulgated pursuant to the CPSL *require* the disclosure of certain information from protected records regarding a potential foster child to foster family care agencies such as Family Services and, in turn, to the foster parents. *See* 55 Pa.Code §§ 3130.40(c), 3130.44(c), 3130.61(e), 3130.67(b)(3),(5),

the interests of the plaintiffs in pursuing their tort litigation outweighed the interests protected by the statutory privilege. Although the privilege created by the CPSL is not absolute and disclosure of otherwise confidential information is therefore permitted where compelled by sufficiently weighty interests, *see Commonwealth v. Ritchie,* 509 Pa. 357, 502 A.2d 148 (1985), we cannot, for the reasons discussed below, agree with the trial court's ruling.

## V. BALANCING COMPETING INTERESTS UNDER THE CHILD PROTECTIVE SERVICES LAW AND THE JUVENILE ACT

■ The trial court's conclusion that the privileges asserted by Family Services and the Pedatellas were overridden by the interests of the plaintiffs in pursuing their tort litigation is based upon an analysis similar to that employed by the Pennsylvania Supreme Court in *Commonwealth v. Ritchie, supra.*

The *Ritchie* court was faced with a claim by a criminal defendant charged with sexually abusing his minor daughter that in preparing his defense to those charges he was

constitutionally entitled to access to the county Child Welfare Services file pertaining to his daughter. In considering this claim, the court recognized the broad confidentiality provisions of the CPSL, but also acknowledged the statutory exceptions to confidentiality, including the provision that materials otherwise confidential under the CPSL may be disclosed to a court of competent jurisdiction pursuant to a court order.[14] The court gave heed to the principles of statutory construction that every statute shall be construed so as to give effect to all of its provisions, 1 Pa.C.S. § 1921(a), and that it is presumed that the General Assembly does not intend to violate the Constitution of the United States, 1 Pa.C.S. § 1922(3). Applying these principles, and holding that the sixth amendment to the federal constitution entitled the defendant to review by an advocate's eye of all materials that might be useful to his defense, the *Ritchie* court reasoned that the statutory provision allowing disclosure of confidential materials to courts of competent jurisdiction must be read to permit access by defense counsel to the entire Child Welfare Services file on defendant's daughter.[15]

3490.91(a)(1), 3700.38(c),(d). It would be absurd to conclude that although such information was protected in the hands of the Department of Public Welfare and the county agency, that protection vanished once the information reached the hands of those most directly involved with the child's care and well-being.

Further, although the language of the statute itself does not explicitly impose a duty of confidentiality upon the foster parents and foster family care agency, applicable regulations do. Chapter 3680 of Title 55 of the Pennsylvania Code governs the administration and operation of a Children and Youth Social Service Agency, defined as "an agency, whether public or private, for profit or not-for-profit, which provides the social services specified in subsection (c)," including foster family care. 55 Pa.Code § 3680.1. Family Services, as an agency governed by chapter 3680, is thus subject to the provisions of section 3680.34, which states that "information that may identify a child or the family, as well as other information contained in the client record, is confidential," 55 Pa.Code § 3680.34, and may be disclosed only in accordance with the provisions of the Adoption Act, the CPSL, and applicable regulations, 55 Pa.Code § 3680.35. The Pedatellas, as providers of foster parenting services to whom Family Services could properly disclose information in the client record pursuant to 55 Pa.Code § 3680.35(b)(3), are equally subject to the confidentiality requirements of this section.

**14.** *Ritchie* discussed an earlier version of the CPSL, then codified at 11 P.S. § 2201 *et seq.* The confidentiality provision at issue was 11 P.S. § 2215(a), which at the time enumerated only five exceptions to the general principle of confidentiality. Since the decision in *Ritchie,* additional exceptions have been added, and the Law has been repealed and substantially reenacted at 23 Pa.C.S. § 6301—6385. The substance of 11 P.S. § 2215(a) is now contained in 23 Pa.C.S. §§ 6339 and 6340. For purposes of our analysis here, the changes in the statute subsequent to the *Ritchie* decision are not material.

**15.** The Pennsylvania Supreme Court's analysis based on the sixth amendment to the federal constitution was later overridden by the United States Supreme Court in *Pennsylvania v. Ritchie,* 480 U.S. 39, 107 S.Ct. 989, 94 L.Ed.2d 40 (1987). The U.S. Supreme Court used a due process analysis based on its prior decisions in *United States v. Agurs,* 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976) and *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), in concluding, like the Pennsylvania Supreme Court, that the privilege created by the CPSL was not absolute and permitted disclosure of protected records which were material to the defense of a person accused in a criminal proceeding. However, the U.S. Supreme Court found that *in camera* review of the county agency records by the trial court and disclosure to the defense only of materials that might change the outcome of

In the present case, the trial court did not articulate any explicit statutory basis for its conclusion that discovery of protected information should be permitted. However, it did express its policy judgment that the interests of the plaintiffs in pursuing their cause of action and of our legal system in "bring[ing] to issue a justiciable tort" should not be frustrated by allowing the assertion of privilege to cripple the plaintiffs' ability to prove their case to a trier of fact. Based on this judgment, it apparently concluded that the shield of confidentiality created by the CPSL could simply be ignored. We cannot agree.

In sharp contrast to the claims asserted in *Ritchie*, the plaintiffs' discovery requests in this case do not raise claims of constitutional magnitude. Nor do plaintiffs here, as did the criminal defendant in *Ritchie*, face incarceration if they do not prevail in their civil suit. Rather, they seek financial compensation for injuries suffered by their daughter, allegedly due to the actions or inactions of the Pedatellas and Family Services.[16] Accordingly, the panoply of constitutional protections afforded criminal defendants, including the right under *Brady v. Maryland, supra*, to be provided with information material to their case, is not at stake in weighing their discovery rights against the protections provided by the CPSL.

 Certainly the trial court is correct in recognizing that these privileges, or indeed any privilege, operates as an impediment to the search for truth. For this reason, "privileges are not lightly created nor expansively construed." *U.S. v. Nixon*, 418 U.S. 683, 709–10, 94 S.Ct. 3090, 3108, 41 L.Ed.2d 1039 (1974), *quoted in Lepley v. Lycoming County Court of Common Pleas*, 481 Pa. 565, 573, 393 A.2d 306, 310 (1978). However, those privileges which are established by constitution, common law or statute are "designed to protect weighty and legitimate competing interests." *Id.* Thus where the legislature has considered the interests at stake and has granted protection to cer-

tain relationships or categories of information, the courts may not abrogate that protection on the basis of their own perception of public policy unless a clear basis for doing so exists in a statute, the common law, or constitutional principles. *Commonwealth v. Moore*, 526 Pa. 152, 159, 584 A.2d 936, 940 (1991) ("[T]he general powers of the courts do not include the power to order disclosure of materials that the legislature has explicitly directed be kept confidential.") No such basis was found by the trial court or asserted by the plaintiffs in this case.

The stated purpose of the Child Protective Services Law is:

to encourage more complete reporting of suspected child abuse; to the extent permitted by this chapter, to involve law enforcement agencies in responding to child abuse; and to establish in each county protective services for the purpose of investigating the reports swiftly and competently, providing protection for children from further abuse and providing rehabilitative services for children and parents involved so as to ensure the child's well-being and to preserve, stabilize and protect the integrity of family life wherever appropriate. It is also the purpose of this chapter to ensure that each county children and youth agency establish a program of protective services with procedures to assess risk of harm to a child and with the capabilities to respond adequately to meet the needs of the family and child who may be at risk and to prioritize the response and services to children most at risk.

23 Pa.C.S. § 6302.

The confidentiality provisions of the CPSL have several clear functions in light of the statute's broad purposes: to encourage reporting of abuse by ensuring that persons with knowledge of abuse are not deterred from reporting it by the prospect of the abuser learning their identity and seeking retribution; to facilitate the investigation of

---

the trial struck the proper balance between the confidentiality interests protected by the statute and the defendant's due process rights.

**16.** We do not intend to minimize the grievous nature of the injuries suffered by plaintiffs' daughter, nor the pain, anger and frustration

with which the parents have undoubtedly been overwhelmed. The present action, however, cannot undo those harms and must be recognized for what it is—a tort action which is, like all tort actions, an effort to make the plaintiffs *financially* whole for injuries suffered as a result of the wrongful conduct of another.

abuse by assuring potential witnesses that the information they provide to investigators will not be made public; to facilitate the rehabilitation and treatment of abused children and their families by encouraging open, frank communications with agency personnel and treatment providers; to encourage the effective operation of the child protective service by enabling it to keep complete and comprehensive files on all aspects of a family's circumstances without fear that information placed in such files will be subject to scrutiny by persons not involved in the process of rehabilitating the family; and to prevent the innocent victims of abuse from also becoming victims of public stigma by guarding information about the intimate details of their lives from the prying eyes of outsiders.

The exceptions to confidentiality set out by the CPSL also have a function in light of the purposes of the statute, as was made clear by the Pennsylvania Supreme Court in *Ritchie:*

> The Child Protective Services Law was enacted to identify and protect children suffering from abuse and to provide rehabilitative services to such children and their families. In addition to providing procedures concerning the investigation and reporting of abuse cases, the Law has a section providing for the confidentiality of such records.... The confidentiality provision provides that reports made pursuant to the Law shall be confidential, but shall be made available to certain enumerated classes of officials and groups....
>
> The legislative purpose herein was clearly to create an agency, not only to investigate allegations of child abuse, but to provide care, shelter, and erase where possible the cruel stains upon their innocence. To accomplish this the statute provides for confidentiality and, as well, for exceptions to the confidentiality imposed; all are avenues to help.

*Commonwealth v. Ritchie, supra* at 362–64, 502 A.2d at 151 (citations omitted).

*Ritchie* thus instructs us that we must look to the overall purposes of the CPSL in interpreting the specific provisions creating exceptions to the general principle of confidentiality. Those exceptions are designed to promote the statutory goals of investigation and prosecution of abuse, protection and treatment of the abused child, and rehabilitation of the abusive family by permitting a free flow of information regarding the family among the various public and private agencies and entities involved with the family throughout the entire process of investigation, treatment, and rehabilitation. The type of disclosure permitted by the court in *Ritchie,* which was held to be a necessary corollary under the federal constitution to criminal prosecution of the abuser for his conduct, thus might be viewed as an "avenue to help," or at least as an avenue to deterring further abuse.

The type of disclosure advocated by these plaintiffs, in contrast, is not aimed at helping the abused child or the abusive family, nor is it intended to facilitate criminal prosecution of the abuser. Rather, it is geared towards vindicating the injuries suffered by the plaintiffs and their daughter. While these interests are important, our legislature has made the judgment that attempting to remedy the serious problem of child abuse in our society and to protect and rehabilitate the powerless victims of such abuse is of superior importance.[17] We thus must conclude that discovery by the plaintiffs of materials protected by the Child Protective Services Law, which is neither authorized by the provisions of the CPSL itself nor in furtherance of its goals, may not be permitted.

The trial court's grant of discovery of materials protected by the Juvenile Act was also improper, for similar reasons. The purposes of the Juvenile Act with respect to dependent children like M.F. is "[t]o preserve the unity of the family whenever possible and to pro-

---

**17.** As the experience of the plaintiffs themselves demonstrates, the tragedy of child abuse goes beyond the immediate danger to the child involved. Even when the child has been removed from the abusive home, he or she may suffer the psychological scars of abuse for a lifetime, and those scars may have behavioral manifestations that impact upon the lives of anyone with whom the formerly abused child comes in contact. The possibility that ripples may spread from the initial impact of an abusive act underscores the gravity of the problem of child abuse and the importance of the public interest in avoiding impediments to effective treatment and rehabilitation of abused children.

vide for the care, protection, and wholesome mental and physical development of children coming within the provisions of this chapter." 42 Pa.C.S. § 6301(b)(1). In light of this purpose, the confidentiality of records of court proceedings under the Juvenile Act is clearly designed to promote a full and frank exploration in those proceedings of all matters affecting the welfare of the child without the concern that information developed in those proceedings will become public record, shattering the privacy of the very children and families the Act is intended to help. Like the CPSL, the Juvenile Act contains several defined exceptions to its confidentiality provisions, designed to facilitate the exchange of information among the web of public and private agencies and individuals involved in the care, treatment and rehabilitation of the child and his or her family.

 As discussed in section III, above, the plaintiffs do not fall within any of the exceptions to confidentiality enumerated in the Juvenile Act. Moreover, the discovery they request is not constitutionally required, nor does it promote the purposes of the Act. Accordingly, we must conclude that the judgment of the legislature in protecting the interests of dependent children, their families, and the system put in place to aid and rehabilitate them should not be overridden. The discovery of materials protected by the Juvenile Act thus should not have been permitted by the trial court.[18]

### VI. Conclusion

For the reasons discussed above, we must conclude that the trial court erred in determining that, despite the applicability of the privileges asserted by Family Services and the Pedatellas, the requests for protective orders should be denied. Accordingly, we reverse the orders of the trial court and remand for proceedings consistent with this opinion.

18. Plaintiffs also argue that even if the privileges asserted by the Pedatellas and Family Services are not overcome by their right to discovery, those privileges have been waived because M.F. testified as to the facts surrounding her abuse by her father in the criminal trial which ultimately led to his conviction of several sexual offenses. They cite *Commonwealth v. Davis*, 543 Pa. 628, 674 A.2d 214 (1996), in support of this argument. However, *Davis* stands only for the proposition that when an abuse victim has made confidential records available to the Commonwealth in prosecuting a criminal action, those records must also be made available to the defense. Plaintiffs have not asserted that records containing the information now sought from Family Services and the Pedatellas were made available to the prosecution in the trial of M.F.'s father, and *Davis* does not suggest that an abuse victim's *testimony* results in a waiver of the confidentiality of information otherwise protected by statute. Moreover, this court has held that merely repeating to a third party information previously conveyed under circumstances giving rise to a privilege does not result in a waiver of the privilege. *Commonwealth v. Fewell*, 439 Pa.Super. 541, 654 A.2d 1109 (1995) (Fact that appellant later repeated to a state trooper statements she had made to her psychiatrist regarding the death of her child did not result in waiver of the psychiatrist-patient privilege). Thus, while the substance of M.F.'s testimony is, of course, a matter of public record and available to the plaintiffs in pursuing their tort claim, we cannot conclude that there has been any waiver of the confidentiality of other information which falls within the protection of the Child Protective Services Law or the Juvenile Act. With respect to information protected by the sexual assault counselor privilege or the domestic violence counselor/advocate privilege, the pertinent statutes clearly require that any waiver of those privileges be in writing. As no such waiver has been alleged to exist in this case, the plaintiffs' waiver argument is meritless.