880 A.2d 620

In re ESTATE OF Andrew Jonathan WAGNER.

Appeal of Lehigh County Office of
Children and Youth Services.

In re Estate of Andrew Jonathan Wagner.

Appeal of Commonwealth of Pennsylvania,
Department of Public Welfare.

Supreme Court of Pennsylvania.

Argued May 15, 2003.

Decided Aug. 17, 2005.

50

John Douglas Reinhart, for Lehigh County Office of Children and Youth Services.

Carol Kristen Ulichney, Wilkes Barre, John A. Kane, Myra W. Sacks, Howard Ulan, Harrisburg, for Dept. of Public Welfare.

Jeffry L. Gilbert, Allentown, for Estate of Andrew Jonathan Wagner.

Before: CAPPY, C.J., CASTILLE, NIGRO, NEWMAN, SAYLOR, EAKIN and LAMB, JJ.

## OPINION

Justice EAKIN.

This Court granted review to determine whether the Commonwealth Court erred in holding appellees, administrators of the Estate of Andrew Jonathan Wagner, could subpoena from the Department of Public Welfare (DPW), a copy of a performance audit generated by DPW's investigation into the death of 14–month–old Andrew Jonathan Wagner. We hold such document is a statutorily-defined performance audit and beyond the scope of discovery by the administrators; accordingly, we reverse.

On February 18, 1999, decedent sustained fatal injuries while in the care of a babysitter.[1] Appellant, Lehigh County Office of Children and Youth Services (CYS), had previously investigated the babysitter in connection with alleged abuse involving other children under her care. As suggested by 23 Pa.C.S. § 6343(b),[2] decedent's death prompted DPW to con-

---

1. The babysitter pled guilty to third degree homicide in April, 2000, and was sentenced to 10 to 40 years incarceration.

2. DPW's authority to conduct this performance audit derives from the Child Protective Services Law, which provides:

   **Investigating performance of county agency**
   * * *

duct a performance audit of Lehigh CYS to determine wheth-
er it had complied with the Child Protective Services Law
(CPSL), 23 Pa.C.S. §§ 6300–6385, when handling the prior
allegations of abuse, and to identify ways to improve its
monitoring system. Essentially, DPW sought to determine
whether changes should be made to CYS's policies and proce-
dures, to help prevent future tragedies.

As part of this audit, commonly referred to as a "child death
review," DPW reviewed CYS's records, including relevant
medical records, and interviewed agency staff, decedent's par-
ents, the babysitter, and the parents of at least one other child
who had previously been in the babysitter's care. DPW sent
its findings and recommendations to Lehigh County's county
executive. The county executive distributed the review to
other individuals within the county who were responsible for
preparing a "plan of correction." When completed, that plan
was submitted to DPW.

Sometime thereafter, the administrators filed a petition for
issuance of a subpoena *duces tecum* to the regional director of
the Pennsylvania Office of Children and Youth Services. The
estate sought pre-complaint discovery from DPW, to assist in
determining whether they had a claim against CYS or any
other public agencies. Specifically, the administrators sought
a subpoena requiring DPW to produce all "notes, records,
reports and/or correspondence prepared and compiled by
[CYS] in connection with [DPW's] reviews of [CYS's] proce-
dures in the child abuse investigations of [the babysitter]."
Petition for Issuance of Subpoena *Duces Tecum*, 11/13/00, at 2.
DPW asserted that the child death review was confidential
under the CPSL, *see* 23 Pa.C.S. § 6339 (designating certain
child protective services information as confidential), and that
the administrators were not among the individuals to whom
such confidential information could be released. *See id.*,
§ 6340 (pertaining to release of confidential information).

> **(b) Performance Audit.**—Notwithstanding any other provision of this
> chapter, the secretary or a designee of the secretary may direct, at
> their discretion, and after reasonable notice to the county agency, a
> performance audit of any activity engaged in pursuant to this chapter.
> 23 Pa.C.S. § 6343(b).

On January 22, 2001, the trial court conducted hearing; the only witness was Len Pocius, Director of DPW's Northeast Region. Following the hearing, the court found the child death review was a confidential report under § 6339 of the CPSL, but the administrators were nevertheless entitled to a copy pursuant to § 6340(b), which permits "subjects of" confidential reports to obtain copies. *See id.,* § 6340(b). The court ordered DPW to produce the review, although it permitted the agency to redact the identities of people who reported suspected child abuse or cooperated with the audit.

On appeal, the Commonwealth Court affirmed. *In re Estate of Wagner,* 791 A.2d 444 (Pa.Cmwlth.2002). Unlike the trial court, the Commonwealth Court concluded the child death review was not a "report" within the meaning of § 6339. It explained that reading § 6339 in conjunction with other portions of the CPSL, it was apparent the General Assembly intended the term "reports" as used in § 6339 to "refer to reports of suspected or confirmed child abuse made under the [CPSL,]" including those specifically defined in § 6303, namely, " 'founded report,' 'founded report for school employee,' 'indicated report,' 'indicated report for school employees' and 'unfounded report.' " *Id.,* at 447 (citing 23 Pa.C.S. § 6303). Accordingly, the Commonwealth Court determined the child death review was not entitled to the blanket confidentiality afforded to "reports" pursuant to § 6339. *Id.*

The court noted, however, that aside from "reports," § 6339 also designates as confidential "any other information obtained . . . or photographs or X-rays taken concerning alleged instances of child abuse." *Id.,* at 448 (quoting 23 Pa.C.S. § 6339) (internal quotations omitted). It held that the child death review, although "not a report made within the meaning of Section 6339 [of the CPSL]," *id.,* at 447, was confidential "to the extent that it contains any information or other material obtained by Lehigh CYS concerning alleged instances of suspected or confirmed child abuse." *Id.,* at 448. However, the court also held that insofar as such information pertained to the abuse of decedent, the administrators qualified as "subject[s] of a report," because they are the "parent[s], guard-

ian[s] or other person[s] responsible for the welfare of a child ... named in a report," 23 Pa.C.S. § 6303(a), and were therefore entitled under § 6340(b) of the CPSL to obtain that information. *In re Estate of Wagner,* at 448.

Basically, the Commonwealth Court reasoned that since a "subject of a report" is entitled to this information anyway, as provided in § 6303(a), the administrators could discover those portions of the review containing this information—only those portions which were explicitly shielded in other parts of the CPSL were prohibited from discovery. In addition, the court stated the General Assembly did not intend "to create a privilege to protect the disclosures of DPW or local agency workers about their job performance and the job perform- ances of their colleagues." *Id.* It ordered DPW to produce those portions of the review that pertained to CYS's handling of decedent's case, without discussing any other child abuse case, as well as any portions of the review "that derive[d] from" reports of suspected or confirmed child abuse that mentioned decedent or his parents. *Id.* Further, like the trial court, the Commonwealth Court permitted DPW to redact the identities of persons who had reported abuse or cooperated with the audit. *See id.,* at 449.

CYS and DPW sought this Court's review, arguing the Commonwealth Court erred in requiring DPW to produce any portions of the child death review—particularly the self-as- sessments and performance critiques—when § 6339 of the CPSL dictates that the entire audit is confidential and not subject to disclosure. We hold child death reviews are what the General Assembly has designated them: intergovernmen- tal performance audits, not reports pursuant to § 6339, and are available to only those authorized in § 6343(b). Addition- ally, we reject this piecemeal discovery approach to these audits and conclude public policy requires the entire child review be protected.

As questions of statutory interpretation are ques- tions of law, this Court's review is plenary. *Gustine Union- town Assocs., Ltd. v. Anthony Crane Rental, Inc.,* 577 Pa. 14,

842 A.2d 334, 343 (2004). We are charged with giving effect to every word and provision in a statute. 1 Pa.C.S. § 1921(a). Moreover, we are not to "interpret statutory words in isolation, but must read them with reference to the context in which they appear." *O'Rourke v. Dept. of Corr.*, 566 Pa. 161, 778 A.2d 1194, 1201 (2001). Ultimately, if upon application of these interpretive principles, we conclude that a statutory provision is unclear, we may consider other factors in ascertaining the General Assembly's intent. *See* 1 Pa.C.S. § 1921(c); *Mishoe v. Erie Ins. Co.*, 573 Pa. 267, 824 A.2d 1153, 1155 (2003). However, if a statute is "clear and free from all ambiguity," we may not disregard the letter of it "under the pretext of pursuing its spirit."[3] 1 Pa.C.S. § 1921(b).

Section 6339, entitled **"Confidentiality of Reports,"** provides in full:

> Except as otherwise provided in this subchapter, reports made pursuant to this chapter, including, but not limited to, report summaries of child abuse and written reports made pursuant to section 6313(b) and (c) (relating to reporting procedure) as well as any other information obtained, reports written or photographs or X-rays taken concerning alleged instances of child abuse in the possession of the department or a county agency shall be confidential.

23 Pa.C.S. § 6339.[4] However, the CPSL also enumerates certain categories of individuals and entities to whom DPW

---

**3.** None of the parties contend § 6339 is ambiguous; they disagree as to the "plain meaning" of the provision. *See* DPW's Brief, at 12 ("This Court should find the relevant provisions of the CPSL to be unambiguous...."); Administrators' Brief, at 9 n. 6 ("[T]he 'plain wording' of Section 6339, especially when read in *pari materia* with the other referenced sections, certainly does not support the complete shielding of the performance audit...."). We agree the provision is unambiguous when read in context, and *need not resort to principles reserved for an ambiguous statute.*

**4.** Section 6313(b) and (c) provide:

> **(b) Oral reports.**—Oral reports shall be made to the department pursuant to Subchapter C (relating to powers and duties of department) and may be made to the appropriate county agency. When oral reports of suspected child abuse are initially received at the county agency, the protective services staff shall, after seeing to the immediate safety of the child and other children in the home, immediately notify the depart-

and county agencies must disclose such confidential material. To that end, § 6340 provides, in relevant part:

**Release of Information in Confidential Reports**

(a) **General rule.**—Reports specified in section 6339 (relating to confidentiality of reports) shall only be made available to:

\* \* \*

(11) Designated county officials, in reviewing the competence of the county agency or its employees pursuant to this chapter. . . .

\* \* \*

(b) **Release of information to subject of report.**—At any time and upon written request, a subject of a report may receive a copy of all information, except that prohibited from being disclosed by subsection (c), contained in the Statewide central register or in any report filed pursuant to section 6313 (relating to reporting procedure).

(c) **Protecting identity of person making report.**—Except for reports pursuant to subsection (a)(9) and (10), the release of data that would identify the person who made a report of suspected child abuse or the person who cooperated in a subsequent investigation is prohibited unless the secretary finds the release will not be detrimental to the safety of that person. Law enforcement officials shall treat all reporting sources as confidential informants.

*Id.*, § 6340. Meanwhile, the statute defines "[s]ubject of the report" as "[a]ny child, parent, guardian or other person responsible for the welfare of a child or any alleged or actual

ment of the receipt of the report, which is to be held in the pending complaint file as provided in Subchapter C. The initial child abuse report summary shall be supplemented with a written report when a determination is made as to whether a report of suspected child abuse is a founded report, an unfounded report or an indicated report. (c) **Written reports.**—Written reports from persons required to report [suspected child abuse] under section 6311 shall be made to the appropriate county agency in a manner and on forms the department prescribes by regulation. The written reports shall include [certain hereafter designated] information if available. . . .

23 Pa.C.S. § 6313(b), (c).

perpetrator or school employee named in a report made to [DPW] or a county agency under this chapter." *Id.,* § 6303(a).

DPW and CYS maintain that the child death review is a confidential audit within the meaning of § 6339. They further assert that even though the administrators qualify as "subjects of a report," they cannot gain access to the report's contents, because the "subject of report" exception to confidentiality only affords qualifying parties access to reports of suspected or confirmed child abuse pertaining to them and information in the Statewide Central Register (*i.e.,* indicated and founded reports of abuse), *see id.,* § 6340(b), and the child death review is neither.

The child death review at issue qualifies as neither a report "made pursuant to [the CPSL]" nor a report written "concerning alleged instances of child abuse. . . ." *Id.,* § 6339. The General Assembly established the child death review as an intergovernmental performance audit, with the objective of fostering, between multiple governmental agencies, unreserved evaluation of actions taken and forgone. These audits at times include admissions of second-guessing and hindsight analyses, calculated to improve the system for future care; they do not focus on the allegations of abuse, but on the system's response to those allegations. These audits are not intended to become fodder for those looking to redress past shortcomings, misconduct, torts, or crimes.

In *V.B.T. v. Family Services of West. Pa.,* 705 A.2d 1325, 1333 (Pa.Super.1998), *affirmed,* 556 Pa. 430, 728 A.2d 953 (1999), this Court adopted the Superior Court's opinion, which reasoned:

> The type of disclosure advocated by these plaintiffs, in contrast, is not aimed at helping the abused child or the abusive family, nor is it intended to facilitate criminal prosecution of the abuser. Rather, it is geared towards vindicating the injuries suffered by the plaintiffs and their daughter. While these interests are important, our legislature has made the judgment that attempting to remedy the serious problem of child abuse in our society and to protect

and rehabilitate the powerless victims of such abuse is of superior importance. We thus must conclude that discovery by the plaintiffs of materials protected by the [CPSL], which is neither authorized by the provisions of the CPSL itself nor in furtherance of its goals, may not be permitted.

*Id.*, at 1336 (footnote omitted). Likewise, disclosure of the governmental audit, aimed not at the individual allegations, but at "the serious problem of child abuse in our society," *id.*, would surely hamper candor by those involved and chill this imperative information flow, defeating the stated purpose of the CPSL.

In enacting the CPSL, the General Assembly made clear its objective:

It is the purpose of this chapter to encourage more complete reporting of suspected child abuse; to the extent permitted by this chapter, to involve law enforcement agencies in responding to child abuse; and to establish in each county protective services for the purpose of investigating the reports swiftly and competently, providing protection for children from further abuse....

23 Pa.C.S. § 6302(b). This objective is frustrated if child death reviews are discoverable to plaintiffs searching for potential mistakes in order to support a lawsuit. *See V.B.T.*, at 1333 ("[sections 6339 and 6340] do not include a civil plaintiff seeking discovery in pursuit of a claim for damages based upon alleged conduct of the abused child."). Openness and necessary admissions of employees are vital to improving the care of children subject to CYS and DPW oversight. If candor is not encouraged through confidentiality, improvement will be compromised as employees must inevitably seek to shield their own errors from reviewers out of fear of being sued. This scenario flies in the face of the designed goals of the CPSL. *See Pennsylvania v. Ritchie*, 480 U.S. 39, 60–61, 107 S.Ct. 989, 94 L.Ed.2d 40 (1987) (as designated in CPSL, Pennsylvania has "compelling interest in protecting its child-abuse information.").

It has traditionally been the policy in Pennsylvania that remedial measures taken after an injury are not admissible, a

policy now embodied in our Rules of Evidence. *See* Pa. R.Evid. 407. This rule allows parties to fix a problem without fear that by doing so, they will admit liability. The same policy prevents discovery here, for the review is to identify remedial possibilities and better safeguard children; if the results are discoverable, no admissions leading to remedial actions will be forthcoming. Were child death reviews less than confidential, they would not be worth conducting and would disappear.

In sum, these intergovernmental audits must be used to promote the implementation of better child protective procedures; they cannot accomplish this if agencies and workers fear making discoverable admissions that may lead to liability. "CYA" does not trump improvement of CYS. The statute creating these reviews, and the clearly expressed public policy of the General Assembly and this Court, mandate that no portion of these audits be available to plaintiffs as discovery.

Order reversed. Jurisdiction relinquished.

Former Justice LAMB did not participate in the decision of this case.

Justice NIGRO files a dissenting opinion in which Justice SAYLOR joins.

Justice NIGRO, dissenting.

Unlike the majority, I would hold that the Commonwealth Court properly concluded that Appellees the Administrators of the Estate of Andrew Jonathan Wagner (the "Administrators") could subpoena from Appellant Commonwealth of Pennsylvania, Department of Public Welfare ("DPW") a copy of a "child death review" report that DPW had generated in connection with its investigation into the death of fourteen-month-old Andrew Jonathan Wagner (the "Decedent").[1] Accordingly, I respectfully dissent.

Initially, I note that I am in complete agreement with the majority that child death review reports are neither reports

---

1. Specifically, in dissenting, I would affirm the order of Commonwealth Court below insofar as it required DPW to produce to the Administra-

"made pursuant to [the Child Protective Services Law, 23 Pa.C.S. §§ 6300–6385]," nor reports "concerning alleged instances of child abuse" and thus, are not wholly confidential pursuant to section 6339 of the Child Protective Services Law (the "CPSL"). 23 Pa.C.S. § 6339. The majority goes on, however, to conclude that section 6339 of the CPSL aside, public policy dictates that the whole child death review report in this case be shielded from discovery. I disagree.

First, in my view, the General Assembly, by enacting section 6339 of the CPSL, has already made a legislative determination as to which child protective services materials should be kept confidential as a matter of public policy and thus, this Court should defer to that determination. The majority looks beyond section 6339 and finds that it is the "clearly expressed public policy of the General Assembly" that child death review reports not be made available to plaintiffs in discovery, Slip Op. at 10, because the overall purpose of the CPSL is to "encourage more complete reporting of suspected child abuse . . .; involve law enforcement agencies in responding to child abuse; and to establish in each county protective services for the purpose of investigating the reports swiftly and competently, providing protection for children from further abuse. . . ." 23 Pa.C.S. § 6302(b). However, I am at a loss as to why the majority would resort to looking at the general purpose of the CPSL in order to discern the General Assembly's "clearly expressed public policy" beliefs regarding confidentiality when the General Assembly included in the CPSL a specific and unambiguous provision regarding confidentiality. In other words, I feel certain that had it been the General Assembly's "clear" intent to make child death review reports

tors only those portions of the child death review that pertained to the performance of Appellant Lehigh County Office of Children and Youth, without discussing any other child abuse case, as well as any portions of the review "that derived from" reports of suspected or confirmed child abuse that mentioned Decedent or his parents. *See In re Estate of Wagner*, 791 A.2d 444, 449 (Pa.Commw.2002). Thus, like the Commonwealth Court, I would permit DPW to redact information regarding suspected or confirmed child abuse perpetrated against a child other than Decedent and would also permit it to redact the names and identities of people who had either reported suspected child abuse or had cooperated with the child death review. *See id.*

confidential, it would have simply included such reports in the confidentiality provision rather than secreting any expression of that intent in the statute's general purpose provision.

Furthermore, I cannot agree with the majority that one can find a "clearly expressed public policy ... of this Court" to shield child death review reports from discovery in our per curiam affirmance of the Superior Court order in *V.B.T. v. Family Services of Western Pennsylvania*, 705 A.2d 1325 (Pa.Super.1998).[2] Slip Op. at 10; *see also id.* at 8–9. In *V.B.T.*, parents of a child who had been abused by a foster child living next door attempted to obtain various records regarding the foster child from children and youth services. Noting that the records at issue in that case were confidential under section 6339, and that the parents did not fall within any of the categories of individuals who were entitled to obtain such confidential records, *see* 23 Pa.C.S. § 6340, the Superior Court stated that the "interests protected by the privilege outweigh those of a plaintiff seeking money damages in a negligence action." *Id.* at 1327; *compare Commonwealth v. Ritchie*, 509 Pa. 357, 502 A.2d 148 (1985) (defendant's rights under 6th Amendment to U.S. Constitution outweigh the confidentiality provisions of the CPSL). While the majority apparently reads this decision to state that *no* child protective services records should *ever* be disclosed to a plaintiff in a negligence action, the decision says no such thing. Indeed, as is clear from the portion of the decision that the majority quotes in its opinion, the Superior Court in *V.B.T.* merely deferred *to the legislative determination* that confidentiality

**2.** The majority states that this Court "adopted the Superior Court's opinion" in *V.B.T.*, but, in fact, we merely affirmed the final order of the Superior Court by per curiam order, without in any way indicating that we were affirming based on the Superior Court's decision below. As such, we merely affirmed the *result* of the Superior Court's *V.B.T.* decision, without adopting its rationale. *See Commonwealth v. Tilghman*, 543 Pa. 578, 673 A.2d 898, 904 (1996) (explaining that "[i]n the instance where this Court intends to not only affirm the result of the lower court decision but also the rationale used by the lower court in reaching that decision, we would enter the appropriate order *affirming on the basis of the opinion of the lower court opinion* ...."). I therefore suggest that the majority's assertion that we "adopted" the Superior Court's opinion in *V.B.T.* is unsupportable.

concerns regarding "reports made pursuant to [the CPSL]," 23 Pa.C.S. § 6339, outweighed the important interests of the *V.B.T.* plaintiffs. *See* 705 A.2d at 1336 (concluding that plaintiffs could not get the records designated as confidential under section 6339 because the *"legislature has made the judgment* that attempting to remedy the serious problem of child abuse in our society and to protect and rehabilitate the powerless victims of such abuse is of superior importance") (emphasis added). In contrast, as even the majority concedes, child death review reports are *not* wholly confidential pursuant to section 6339 and thus, our legislature has made no judgment that a plaintiff's access to such reports should give way to confidentiality concerns. Accordingly, *V.B.T.* simply does not support the majority's conclusion that there is a public policy that *child death review reports* be shielded from discovery.[3]

Finally, having established that neither this Court nor the General Assembly has previously recognized a public policy against the disclosure of child death review reports, I also do not believe that this Court should declare such a public policy today. In holding that child death review reports are not subject to discovery, the majority appears to blindly accept DPW's assertions that giving the public access to such reports will "frustrate[ ]" the "Commonwealth's purpose in investigating and treating child abuse" and will not only discourage individuals from cooperating with performance audits but will also discourage DPW from performing them. DPW Brf. at 12–13. I, however, do not accept such assertions and instead, reject outright DPW's incredible suggestion that requiring

3. I also reject the majority's assertion that a public policy against the discovery of child death review reports can be found in Pennsylvania Rule of Evidence 407, which states that evidence of subsequent remedial measures are "not admissible to prove that the party who took the measures was negligent or engaged in culpable conduct...." *See* Pa. R.Evid. 407. Our Rules of Civil Procedure expressly provide not only that "a party may obtain discovery regarding any matter not privileged, which is relevant to the subject matter involved in the pending action ...," but also that "[i]t is not ground for objection [to discovery] that the information sought will be inadmissible at the trial if the information sought appears reasonably calculated to lead to admissible evidence." Pa.R.C.P. 4003.1(a), (b). Thus, the majority's attempt to use an evidentiary rule regarding the *admissibility* of evidence to discern a public policy against *discoverability* of evidence is simply misplaced.

disclosure of child death review reports will cause it to forego investigations into the substandard performance of county agencies and will inhibit county agency employees from cooperating with such investigations. In short, I do not believe that this Court should permit a public agency's threat to neglect its public duty to act in the best interest of its primary constituency, *i.e.*, here, the abused and neglected children of this Commonwealth, to drive a decision to shield that public agency's documents from public disclosure. Rather, I prefer to simply trust that DPW will continue to faithfully monitor the performance of county agencies, conducting performance audits when warranted, and that county agencies and their employees will continue to cooperate with such audits so as to maximize the protections provided to abused and neglected children.[4]

Accordingly, I would affirm the decision of the Commonwealth Court below.

Justice SAYLOR joins.

4. That said, if, in fact, the agencies neglect their public duty and the General Assembly concludes that it is necessary to shroud the written results of child death reviews in a veil of confidentiality in order to make DPW's audit power more effective, then the General Assembly can amend the CPSL to provide for such confidentiality.