J-A30016-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: F.F., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| APPEAL OF: J.W., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1584 EDA 2025 |

Appeal from the Order Entered June 4, 2025
In the Court of Common Pleas of Philadelphia County
Juvenile Division at No(s):  CP-51-DP-0000451-2024

| | | |
|---|---|---|
| IN THE INTEREST OF: F.L.F., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: J.W., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1585 EDA 2025 |

Appeal from the Decree Entered June 4, 2025
In the Court of Common Pleas of Philadelphia County
Juvenile Division at No(s):  CP-51-AP-0000216-2025

BEFORE:  LAZARUS, P.J., PANELLA, P.J.E., and SULLIVAN, J.

MEMORANDUM BY PANELLA, P.J.E.:              **FILED FEBRUARY 6, 2026**

J.W. ("Mother") appeals from the decree involuntarily terminating her parental rights to F.F. (d.o.b. 11/2023) ("Child) and the order changing Child's

permanency goal to adoption.[1] After our careful review, we are constrained to vacate and remand.

> [Child] was born [in] November [] 2023. The Philadelphia Department of Human Services ("DHS") became aware of this family on December 27, 2023 due to concerns regarding Mother and Father's substance use and lack of stable housing. However, DHS did not accept the case for services at that time and the General Protective Services (["GPS"]) report investigation was closed in January 2024. The family later became involved with DHS on May 14, 2024, when it received a GPS report containing further concerns that Mother was under the influence of drugs while caring for the Child. On May 15, 2024, DHS obtained an Order of Protective Custody (["OPC"]) for the Child and placed him in the care of his paternal grandmother. He has remained in DHS care consistently since that time. At the May 17, 2024, shelter care hearing, the OPC was lifted and the temporary commitment to DHS was ordered to stand. Mother and Father were ordered to engage in drug and alcohol treatment.
>
> On August 14, 2024, the Child was adjudicated dependent based on present inability and fully committed to DHS. The court ordered Mother to be referred for Community Behavioral Health (["CBH"]) services, to enroll in a drug and alcohol treatment program, and to comply with all recommendations. Mother was also ordered to sign all necessary consents and releases for herself and the Child. Additionally, Mother was ordered to attend the Achieving Reunification Center (["ARC"]) for parenting classes. The testimony reflected that Mother was enrolled in an inpatient drug treatment program. Therefore, she was permitted supervised visitation with the Child at the facility. Mother's visitation was to be supervised twice weekly for two hours at the CUA agency following discharge from the inpatient treatment program. At the October 4, 2024, permanency review hearing, it was reported that Mother was incarcerated at Philadelphia Industrial Correctional Center (["PICC"]). The court found that Mother was noncompliant with her Single Case Plan (["SCP"]) objectives and had made no progress toward alleviating the circumstances which brought the Child into care. At the January 13, 2024, permanency review

_____

[1] The court also terminated Father's parental rights to Child. He has not appealed.

hearing, the record reflected that Mother had not yet availed herself to CUA for services. Mother was ordered to be attend the Clinical Evaluation Unit (["CEU"]) for a dual diagnosis assessment, a forthwith drug screen, and three random drug screens prior to the next court date.

On May 7, 2025, DHS filed petitions to change the goal from reunification to adoption and to involuntarily terminate Mother's parental rights to the Child. The Goal Change and Termination of Parental Rights hearing (["TPR hearing"]) was [scheduled for] June 4, 2025. [As of that date, Mother had not seen the 19-month old Child for 13 months.]

Juvenile Court Opinion, 7/22/25, at 1-3 (record citations and unnecessary capitalization omitted).

Mother did not attend the TPR hearing but her counsel appeared on her behalf. At the beginning of the hearing, DHS entered exhibits supporting its service of notice to Mother. DHS Exhibit 2[2] contained a subpoena for the hearing with a notation that DHS had unsuccessfully attempted to personally serve Mother with notice at 3300 Gurley Road, Philadelphia, PA 19154 twice before; a return of service that indicated the item had been left at the front door on May 14th; United States Postal Service ("USPS") certified mail receipts for Mother at the Gurley Street address; and tracking records that showed that, as of June 1, 2025, the certified mail was "moving through the network." *See* DHS Exhibit 2. DHS Exhibit 3 was the Parent Locator Search ("PLS")

---

[2] DHS Exhibit 2 is hand-marked as "Exh. 1." For sake of consistency, we will continue to identify Exhibit 2 as it is identified on the Exhibit List, the parties' brief's, and the court's opinion.

Report containing the Gurley Road address and a possible email and phone number for Mother. *See* DHS Exhibit 3.

At the hearing, Mother's counsel argued that service was not adequate because, for years, Mother had not lived at the Gurley Street address to which DHS served notice, and that Mother had the Gurley Street address prior to her last known address at Algard Street, Philadelphia. *See* N.T. Hearing, 6/4/25, at 8-9. Counsel also argued that the certified mail sent to Gurley Street was not compliant with the Adoption Act, which requires that service by mail be made by registered mail, as it is more secure. *See id.* at 9. Finally, counsel argued that personal service was never achieved because the return of service does not specify at what address notice was left and that, in any event, leaving notice at the front door is not sufficient.

The court observed that the last known address it had for Mother was at PICC where she had been incarcerated, but counsel for DHS said they did not attempt to serve Mother there. *See id.* Similarly, DHS did not attempt to serve Mother at the Algard Street address because testimony at previous hearings reflected that Mother no longer lived there.

Upon considering counsel's arguments, the court found DHS made reasonable, good faith efforts to serve Mother. *See id.* at 11-12.[3] The case

_____

[3] The court relied in part on the fact that "similar arguments were made at the May listing. The matter was continued for service … ." N.T. Hearing, 6/4/25, at 11. However, our review confirms Mother's representation that there was

*(Footnote Continued Next Page)*

proceeded to the evidentiary portion of the hearing at which DHS presented the testimony of Community Umbrella Agency ("CUA") caseworker Clayton Graves; and paternal grandmother V.F. At the conclusion of the hearing,

> [the] court involuntarily terminated Mother's parental rights to the Child pursuant to 23 Pa. C.S.A. §2511(a)(1), (2), (5), and (8). In accordance with 23 Pa. C.S.A. §2511(b), th[e] court found that termination of Mother's parental rights best served the developmental, physical, and emotional needs and welfare of the Child. Mother's Counsel filed a Notice of Appeal and a Concise Statement of Errors Complained of on Appeal on June 26, 2025.

Juvenile Court Opinion, 7/22/25, at 6.

Mother timely appealed and filed a contemporaneous statement of errors complained of on appeal. *See* Pa.R.A.P. 1925. The court filed a Rule 1925(a) opinion on July 22, 2025.

Although Mother raises nine claims for this Court's review, we find the first issue dispositive:

> 1. Did the trial court err as a matter of law and abuse its discretion by involuntarily terminating [Mother]'s parental rights where the trial court and the [DHS] failed to comply with the service requirements outlined in the Adoption Act, 23 Pa.C.S.[A.] § 2100- 2800 et. al, and the Rules of Orphans Court Procedure, Rule 15.4 and Rule 15.10?

Appellant's Brief, at 4.[4]

_____

no such May hearing. In any event, the court abandoned this reasoning in its opinion to this Court.

[4] DHS argues Mother's claim is waived for her failure to object to the court's finding that DHS made a good faith effort to serve her, relying on ***PCS Chadaga v. Torres***, 252 A.3d 1154, 1157 (Pa. Super. 2021), for the
*(Footnote Continued Next Page)*

Because Mother's issue requires the interpretation of the Adoption Act, the Pennsylvania Rules of Civil Procedure, and Orphans Court Rules, our standard of review is de novo and our scope of review is plenary. ***See In re Adoption of K.M.D.***, 261 A.3d 1055, 1059 (Pa. Super. 2021). It is well-settled that:

> [I]ssues involving proper service of notice in termination proceedings have a constitutional underpinning. The Fourteenth Amendment provides, in relevant part: "nor shall the State deprive any person of life, ***liberty***, or property, without due process of law...." U.S. Const. Amend. 14. … Among the oldest of "fundamental liberty interests" recognized by the Constitution is a parent's right to make decisions concerning the care, custody, and control of his or her children.
>
> Naturally then, it is well-settled that any individual whose parental rights are to be terminated must be afforded due process—that is, certain procedural safeguards. ***See In re A.N.P.***, 155 A.3d 55, 66 (Pa. Super. 2017). "Due process requires nothing more than adequate notice, an opportunity to be heard, and the chance to defend oneself in an impartial tribunal having jurisdiction over the matter." Although we have explained that due process "is flexible and calls for such procedural protections as the situation demands," we are unwilling to allow the termination of parental rights "without ***strict compliance*** with the procedures set forth by the Legislature...." ***Id.*** at 66, 68.

_____

proposition that rulings to which an appellant does not object are waived. ***See*** Appellee's Brief, at 17-19. We do not find ***PCS*** controlling, as it is distinguishable. In ***PCS***, the appellant made a one sentence motion for a stay based on an executive order, which the trial court denied. ***See PCS***, 252 A.3d at 1157. This Court deemed her issue related to the denial waived for her failure to either object to the court's ruling or raise her argument in the trial court about why she deemed the order to apply, and instead arguing it for the first time on appeal. Here, Mother's counsel argued extensively about why DHS failed to make a good faith efforts to serve her. Therefore, we decline to find waiver, as both DHS and the trial court had a full opportunity to respond to Mother's arguments and Mother is not raising her issue for the first time on appeal. ***See Commonwealth v. Cline***, 177 A.3d 922, 927 (Pa. Super. 2017).

> Strict compliance is warranted in termination matters because of the gravity of such cases. Given the "complete and irrevocable" nature of the decision, our Supreme Court has explained that "termination of parental rights is one of the most serious and severe steps a court can take." ***In re Adoption of M.R.D.***, … 145 A.3d 117, 1129 ([Pa.] 2016).

***In re Adoption of K.M.D.***, 261 A.3d 1055, 1059 (Pa. Super. 2021) (brackets and some citations and quotation omitted; emphases in original).

Toward this end, Section 2513 of the Adoption Act expressly addresses the notice requirement for involuntary termination of parental rights matters, directing that:

> At least ten days' notice shall be given to the parent or parents, putative father, or parent of a minor parent whose rights are to be terminated, by personal service or by registered mail to his or their last known address or by such other means as the court may require.

23 Pa.C.S.A. § 2513(b).

Further, Pennsylvania Orphans' Court Rule 15.4 provides, in pertinent part:

> (3)(A) For a proceeding under Rule 15.10 (relating to Involuntary Termination of Parental Rights), every person entitled to notice as provided in 23 Pa. C.S. §25 13(b) shall be provided with notice of the hearing by one of the following means:
>
> (i) personal service;
>
> (ii) registered or certified mail with delivery restricted to the addressee only and a return receipt requested mailed to the person's residence, location where he or she is known to be staying, or business where he or she is known to be currently employed; or

(iii) **such other means including electronic transmission as the court may require under the facts of the individual case**.

* * *

(4) If service cannot be obtained upon the person whose parental rights are sought to be terminated either because service is refused or unsuccessful and no alternative service is directed by the court or because the person's identity or whereabouts are unknown after reasonable investigation, then **notice by publication** shall be given as directed by the court, after a motion in accordance with Pa.R.C.P. No. 430(a) and upon a finding by the court that a reasonable investigation was made.

Pa. O.C.R. 15.4(b)(3)(A), (4) (emphases added).

Finally, pursuant to Pennsylvania Rule of Civil Procedure 430(a),

If service cannot be made under the applicable rule the [petitioner] may move the court for a special order directing the method of service. The motion shall be accompanied by an affidavit stating the nature and extent of the investigation which has been made to determine the whereabouts of the [respondent] and the reasons why service cannot be made.

Pa.R.C.P. 430(a). Importantly, it is the agency seeking termination that bears the burden to affirmatively prove proper service. *See K.M.D.*, 261 A.3d at 1060.

Here, Mother argues the court erred in finding DHS made a good faith effort to serve her. She argues DHS attempted to serve her by unrestricted certified mail and personal service at the oldest of three possible addresses of which it was aware. When personal service failed, the package with the petitions and subpoena for the hearing were left at the front door. *See* Appellant's Brief, at 6. The certified mail tracking reflects it was never delivered. Mother also maintains DHS violated the service requirements

- 8 -

because it mailed the documents by unrestricted certified mail instead of registered or restricted certified mail. Finally, even if those attempts were considered a good faith effort, when they failed, DHS did not seek authorization to utilize alternate service methods "by such other means as the court may require," including electronic transmission or publication. *Id.* at 27-28 (citing 23 Pa.C.S.A. § 2513(b)); Pa. O.C.R. 15.4(3)(A)(iii), (4).

DHS responds that it made good faith efforts to serve Mother, who was transient. *See* Appellee's Brief, at 22-24. Addressing the publication requirement in Rule 15.4, it maintains that, as a public agency, it was prohibited from moving to serve Mother by publication because of the requirement that it keep child welfare records confidential. *See* Appellee's Supplemental Brief,[5] at 1-2 (pagination provided). It notes that Mother had

_____

[5] On January 6, 2026, this Court granted DHS's motion to file a supplemental brief to address an issue raised at oral argument regarding the publication requirement in Rule 15.4, citing *In re Adoption of E.M.I.*, 342 A.3d 117 (Pa. Super. 2025). *See* Application to File Supplemental Brief, 12/10/25, at 1; Order, 1/6/26. DHS filed its supplemental brief on January 6, 2026, stating it was to address the argument panel's concerns regarding "the continuing validity of the holdings" in *In the Interest of H.B.*, 328 A.3d 514, 2024 WL 4261774 (Pa. Super. filed Sept. 23, 2024) (unpublished memorandum), and *In the Interest of A.S.S.*, 272 A.3d 458, 2022 WL 39964 (Pa. Super. filed Jan. 5, 2022) (unpublished memorandum). However, Appellee did not address any of the above cases, arguing only that confidentiality issues preclude it from publishing notice. However, our own review reveals that all three cases are distinguishable from this one. *See E.M.I.*, 342 A.3d at 122 (concluding agency complied with Rule 15.4 where it included the details of its good faith effort to serve father in its motion for publication since transient father's location was unknown; agency properly published notification in county of father's last known address); *H.B.*, 328 A.3d 514, 2024 WL 4261774, at *5
*(Footnote Continued Next Page)*

not attended any hearing since the August 2024 adjudication and has not seen Child for thirteen months, so "one could infer that this was not a situation of a one-off failure stemming from a lack of notice." Appellee's Brief, at 24 (record citations omitted). We disagree.

At the TPR hearing, DHS provided evidence in support of its position that it made sufficient attempts at service of the termination and goal change petitions and notice of the hearing: (1) a subpoena to Mother containing the address, 3300 Gurley Road, Philadelphia, PA 19154, with a notation that three personal attempts had been made to Mother by May 14, 2025; (2) a return of service dated May 14, 2025 that unsuccessful personal service attempts had been made on May 12th and 13th, 2025, and that the mail was left at the front door; (3) two certified mail receipts for mail sent to 3300 Gurley Road; and (4) United States Postal Service ("USPS") tracking reports for the two pieces of certified mail that show, as of May 29, 2025 and June 1, 2025, the mail was moving through the network, but no indication it was delivered. ***See*** DHS Exhibit 2. DHS also entered into evidence an April 2, 2025 Parent Locator Service Report ("PLS") that lists 3300 Gurley Road as a possible address for Mother, as well as a phone number and an email address. ***See*** DHS Exhibit 3.

_____

(finding agency complied with Rule 15.4 where agency witness testified she told Mother about the hearing twice in person and sent email to Mother's counsel with hearing information). Finally, ***A.S.S.*** is inapposite because it was decided in January 2022, months before Rule 15.4 became effective in July 2022.

While the court found DHS's above good faith attempts were sufficient to effectuate service on Mother and provide her notice of the TPR hearing due to her transiency and the history of this case, we are constrained to disagree. First, DHS unsuccessfully attempted to provide Mother with personal service. **See** DHS Exhibit 2. Next, not only was unrestricted certified mail not delivered, but it should have been sent by either first class, registered, or certified mail with delivery restricted. **See** Pa. O.C.R. 15.4(b)(1)(B). Finally, once its service attempts failed, DHS did not move for service by either publication or electronic transmission, despite the PLS providing a possible email address for Mother. **See** DHS Exhibit 3; **see also In re Adoption of K.M.D.**, 261 A.3d at 1059 (observing that **strict compliance** with legislative notice procedures is required in cases involving the termination of parental rights, as they involve "one of the most serious and severe steps a court can take.") (quoting **In re Adoption of M.R.D.**, 145 A.3d at 1129 (brackets omitted; emphasis added); Pa. O.C.R. 15.4(b)(3)(A), (4).

While DHS argues that it was precluded from moving for publication because child welfare records must remain confidential, we do not find this argument persuasive. First, DHS has not provided this Court with any pertinent law to support its position, other than general observations about the confidential nature of child welfare files. **See** Appellee's Supplemental Brief, at 1-2. Furthermore, its reliance on **V.BT. v. Family Services of Western Pennsylvania**, 705 A.2d 1325 (Pa. Super. 1998), is not legally

persuasive, as the issue there involved confidential records of sessions with a child's sexual assault counselor, which were absolutely privileged under the Protection From Abuse Act. **See V.B.T.**, 705 A.3d at 1330.

The Legislature drafted Rule 15.4 to expressly allow service by publication in termination cases where an agency demonstrates it failed to serve a party despite its good faith efforts. The Rule makes no differentiation about an action brought by a public agency versus one brought by a private party. **See** O.C.R. 15.4. It is the parent's lack of cooperation that has created the situation, and Rule 15.4 actually protects both parties by providing the agency one more way to serve a parent and the parent one more opportunity to receive notice of the pending petitions and hearing.

We recognize that Mother is transient and has not cooperated with DHS or this process despite knowing what was required to be reunited with Child. We also sympathize with the scenario presented to DHS regarding Mother's whereabouts and its goal of serving the best interests of the Child. However, it is DHS's burden to prove its good faith attempts at service, and if it had evidence that it unsuccessfully made a good faith effort to provide the service identified in Rule 15.4(b)(3)(A), it was statutorily required to move for service by publication pursuant to Rule 15.4(b)(4), which it failed to do. Therefore, we must reluctantly conclude that the court abused its discretion when it found that DHS made a good faith effort to serve Mother and entered the decree terminating Mother's parental rights to Child and the order changing Child's

goal to adoption. ***See Interest of H.B.***, 328 A.3d 514, 2024 WL 4261774, at *4 ("As disappointing and uncooperative a respondent's acts of refusing service may be, it is the petitioner who must prove service by affirmative acts, and not the respondent by his or her acts of omission or rejection.") (citation, brackets, and ellipsis omitted).[6] Therefore, we vacate the decree and order and we remand for DHS and the court to strictly comply with the procedures set forth by Orphans' Court Rule 15.4.

Order and decree vacated. Case remanded. Jurisdiction relinquished.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 2/6/2026

---

[6] Unpublished memoranda filed after May 1, 2019 may be relied on for their persuasive value. ***See*** Pa.R.A.P. 126(b).